CHARLES F. W. DAMBMANN and CHARLES GLASER, co-partners, trading as DAMBMANN BROS. & Co. *vs.* WILLIAM H. RITTLER and GEORGE BECHTEL, co-partners, trading as LORENTZ & RITTLER.

*Contract— Validity—Option of Purchaser.*

The defendants agreed to sell and deliver to the plaintiffs during the month of September, 1888, from "three to five hundred tons of acid phosphate," the plaintiffs "to give ample notice of their wants, twenty-four hours ahead of time specified for delivery of each order," cash to be paid on delivery. Three hundred tons were delivered, and paid for in cash on delivery, and the defendants declined to deliver any more. An action was brought to recover damages for breach of contract. HELD :

That the contract by the terms of which the defendants were to deliver, upon notice from the plaintiffs, additional quantities of phosphate not exceeding two hundred tons in all, was enforceable on the demand of the plaintiffs for delivery, and damages might be recovered for defendants' refusal to make delivery.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, YELLOTT, STONE, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*B. Howard Haman,* for the appellants.

*George Whitelock,* and *Samuel D. Schmucker,* for the appellees.

YELLOTT, J., delivered the opinion of the Court.

A suit was instituted in the Court below by the appellees against the appellants; the plaintiffs claim-

ing damages for an alleged breach of contract. The contract is set forth in the declaration. The defendants demurred to the declaration, and the demurrer being overruled and leave granted to plead over, a judgment was subsequently entered in favor of the plaintiffs. The record discloses the following facts: The appellants agreed to sell and deliver to the appellees, during the month of September, 1888, from three to five hundred tons of acid phosphate. By the terms of the contract, the appellees were "to give ample notice of their wants twenty-four hours ahead of the time specified for delivery of each order;" and cash was to be paid on delivery. The phosphate was to be "filled into buyers' bags and delivered to buyers' drays in sellers' factory." Three hundred tons were delivered and paid for in cash on delivery. The appellants then informed the appellees that they would decline to deliver any more. The appellees denied their right so to decline, and on the 22nd of September, 1888, notified the appellants that they would exercise their option to take the remaining two hundred tons, and requested the appellants to deliver the same. The appellants refused to deliver the remaining two hundred tons, and suit was brought by the appellees to recover damages for breach of the contract.

The only question really involved in controversy and presented for determination, is whether there was such a contract as can be enforced in a Court of law. Three hundred tons of phosphate had been delivered by the defendants and paid for by the plaintiffs. The defendants, by the terms of the contract, were to deliver, upon notice from the plaintiffs, additional quantities of phosphate, not exceeding two hundred tons in all. The plaintiffs had an option to make a demand for the delivery of the remaining two hundred tons of phosphate or any portion of it. The plaintiffs were not

bound to make a demand for delivery but if they did so, the defendants had agreed to deliver the article. It seems to be a settled principle that an agreement may be so framed as to leave one party an option, and thus impose no obligation on the other party until the option is exercised so as to create an obligation. 2 *Pars. Cont.*, 657; *Wolf vs. Willits*, 35 *Ill.*, 88; *Jenkins vs. Green*, 27 *Beav. Ch. Cases*, 437.

In contracts of this' nature when one party has an option and gives notice that he has exercised it, the effect of such notice is to impose on the other party a binding obligation enforceable in a Court of law. Such is clearly the doctrine as expounded by PARK, J., in *Chippendale vs. Thurston*, 4 *Carr. & P.*, 101.

In *New Brunswick and Canada R. R. Co. vs. Wheeler*, 12 *Fed. Rep.*, 377, 115 *U. S.*, 29, the Court, adopting the language of Chief Justice COCKBURN in a recent English case, said in reference to a notice by a defendant of his intention not to perform his part of an executory contract, that "The promisee, if he pleases, may treat the notice of intention as inoperative, and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of non-performance; but in that case he keeps the contract alive for the benefit of the other party as well as his own; he remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstances, which would justify him in declining to complete it. On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action on a breach of it, and in such action he will be entitled to such damages as would

have arisen from the non-performance of the contract at the appointed time, subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss."

As this was the sole question involved in controversy, it is apparent that there was no error in the ruling of the Court below, and its judgment should be affirmed.

*Judgment affirmed.*