(87 App. Div. 329.)

## A. B. FARQUHAR CO., Limited, v. NEW RIVER MINERAL CO.

(Supreme Court, Appellate Division, First Department. November 13, 1903.)

**1. SALE—PARTIES TO CONTRACT.**
    A contract of sale signed, "B. & Co., Sales Agents," and "N. Co., by T.," and partly performed by the N. Co., will be held to have been made by the N. Co.

**2. SAME—OPTION CONTRACT—EXTENSION OF TIME.**
    The six months provided in an option contract for ordering iron was extended the length of time the seller's furnaces were shut down so that it was unable to make deliveries; the purchaser having written it, "As many months as you are stopped, you will, of course, add to our contract time for taking out the balance," and the seller having replied that it would, of course, extend the time, as it was unable to make the deliveries then.

**8. SAME—CONSTRUCTION—RIGHT OF ELECTION.**
    Acceptance of an order for "two to three hundred tons" of iron, 25 tons to be delivered in November, "and the balance as ordered in the next six months," binds the seller to deliver 300 tons, if ordered in the time limited; the purchaser having the right of election.

Appeal from Trial Term, New York County.

Action by the A. B. Farquhar Company, Limited, against the New River Mineral Company. From a judgment for defendant on a decision after a trial without a jury (82 N. Y. Supp. 241), plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Henry H. Whitman, for appellant.
A. S. Gilbert, for respondent.

PATTERSON, J.  This cause was tried by the court without a jury.  The complaint was dismissed, and judgment ordered for the defendant on a counterclaim.  The plaintiff appeals from the judgment.

The plaintiff sought to recover damages for the breach of a contract for the sale and delivery of a quantity of iron to be manufactured by the defendant.  The contract, as originally made, is contained in two letters—one written by the plaintiff to Messrs. N. S. Bartlett & Co., New York City.  It is as follows:

"York, Pa., 10/19, 1898.

"Messrs. N. S. Bartlett & Co., 100 William Street, New York City—Dear Sirs: We are full of iron at present and won't want any until the first of January.  But you can enter our order for 200 to 300 tons of Ivanhoe at $10.75 for 1–X and $10.50 for 2–X, deliveries to be made within the next six months as wanted.  You may ship one car load of 1–X next month.  Do not send us any this month as we are full.

"Respectfully,          A. B. Farquhar Company, Limited."

The other letter, in response to that above set forth, is as follows:

"New York, October 20th, 1898.

"A. B. Farquhar Company, Ltd., York, Pa.—Dear Sirs: We beg to acknowledge receipt of your offer of October 19th, which our Mr. Byrd forwarded to us, and we advise you that we will accept same.  We enter order accordingly for 200 to 300 tons of 1–X or 2–X Ivanhoe Pig Iron, at $10.75 for 1–X and $10.50 for 2–X, delivered f. o. b. cars, P. R. R. at York, Pa.  Terms, cash 30 days; delivery 25 tons of 1–X in November and balance as ordered within the next six months.  Thanking you for the order, which shall have our best attention, we are,

"Yours truly,          N. S. Bartlett & Co.,
                                "Sales Agents,
                        "New River Mineral Co.,
                                "By H. C. Taylor."

These two letters form the basis of dealings had between the defendant and the plaintiff concerning the iron therein mentioned.  Up to December, 1899, the defendant had delivered about 183 tons of the iron.  The plaintiff claimed that there was an additional 117 tons to which it was entitled, but, on the other hand, the defendant claimed that, under the terms of the contract, it was not obliged to deliver more than 200 tons, whereupon the plaintiff bought in the market 117 tons, and claimed as damages the difference between the amount paid therefor and the amount which would have been payable to the defendant, had it made complete delivery of the 300 tons at the contract price.

There are two preliminary subjects to be disposed of.  It is contended by the defendant that the contract was not made with it, but with N. S. Bartlett & Co.  This contention cannot be sustained, for the letter of October 20, 1898, is signed by N. S. Bartlett & Co. as "Sales Agents," and is also signed by the "New River Mineral Co., by H. C. Taylor," evidently as a principal.  Further, the proof shows that performance of the contract (whatever it was) was undertaken and partly made by the defendant.  It is also claimed that a

binding contract was not made, because the minds of the parties did not meet respecting the subject-matter of the dealing. That position is also untenable. A contract was made of some kind, and it was partly performed. It was in writing, both parties considered it operative, and their real disagreement is only on the question of its construction. The defendant admits in its correspondence the obligation to deliver 200 tons, and claims performance. It alleges as a separate defense that on the 20th of October, 1898, it agreed to sell and deliver to the plaintiff 200 tons of pig iron, known as 1–X or 2–X Ivanhoe pig iron, at $10.75 for 1–X and $10.50 for 2–X, delivery free on board cars at York, Pa., for which the plaintiff agreed to pay 30 days after delivery; delivery of 25 tons to be made in November, 1898, and the balance as ordered, within 6 months thereafter. It is also alleged in this separate defense that on the same day the defendant gave to the plaintiff an option to order from the defendant an additional 100 tons of iron, and which, if ordered before the 20th day of April, 1899, the defendant promised to sell and deliver to the plaintiff upon the same terms as the 200 tons of iron referred to; and then the defendant proceeds to set up that such option was gratuitously made and without consideration. For a third separate defense, the defendant avers that the plaintiff did not on or about the 20th of April, 1899, order an amount in excess of 200 tons agreed by the defendant to be sold to the plaintiff, as above mentioned, and further alleges that pursuant to the agreement made between the plaintiff and defendant on the 20th of October, 1898, the defendant delivered to the plaintiff 26 tons on or about the 16th day of December, 1899, for which there became due and payable to the defendant, pursuant to the terms of the contract, the sum of $212.95 on the 15th of January, 1900, and further alleges that the plaintiff failed and refused to perform the contract on its part, and failed and refused to pay the sum of $212.95, and for that reason the defendant refused to deliver the balance of 17 tons required by the contract, and counterclaims for $212.95.

It is not to be controverted that the contract set up by the defendant in its answer is none other than that contained in the two letters above set forth. It will be observed that, according to the terms of the offer and acceptance, the contract was to be performed within six months; that is to say, the plaintiff was to give its orders within six months. The learned judge below, in his decision, found that it was the duty of the plaintiff to exercise the option within six months, and that the defendant was not bound to furnish iron not ordered within six months succeeding October 20, 1898. It is apparent that in so finding he overlooked the incontestable fact that the time for performance of the contract was extended by the consent of both parties. The six-months limitation in the contract would have expired on April 21, 1899. The defendants had for a time ceased manufacturing, in consequence of their furnace requiring repairs. On March 11, 1899, the plaintiff wrote to Messrs. N. S. Bartlett & Co., stating that it was sorry that the latter could not ship any iron, and saying that, "as many months as you are stopped, you will, of course, add to our contract time for taking out the balance. This would

only be fair." It is pertinent here to say that all the correspondence relating to the subject-matter of this contract had between the parties was carried on between the plaintiff and Messrs. N. S. Bartlett & Co., the defendant's agents. In reply to the letter last referred to, N. S. Bartlett & Co. on the 13th of March, 1899, wrote to the plaintiff as follows:

"We have your letter of March 11th, and note contents. The New River Mineral Co., will, of course, extend the time for you to take in your iron, as they are unable to make the deliveries now."

With that understanding, the parties continued their dealing until late in the year 1899. It is apparent, therefore, that the six-months limitation contained in the original contract ceased to be a binding term of that contract, and as a result the plaintiff was not in default in failing to order within six months what it was entitled to receive under the contract. The defendant has not performed its contract, even on the basis of the furnishing of 200 tons being sufficient under the contract. The time of the plaintiff was extended as long as the defendant was unable to make deliveries. The extension was given because of the inability of the defendant to deliver, and the plaintiff's right to demand deliveries was not foreclosed up to December, 1899, when it specifically insisted upon the shipment to it of 117 tons. The correspondence between the parties fails to show anything that required the plaintiff to order the iron at any particular time during the currency of the contract, but it does show that from time to time the plaintiff insisted upon its right to require the shipment of 300 tons, and that it made demands for shipments at various times until the 12th of December, 1899, when it instructed the defendant's agent, N. S. Bartlett & Co., as follows:

"Please see that the next car load is shipped immediately and that you follow it up with not less than a car load every ten days until the three hundred tons we purchased are all shipped."

The plaintiff was not in default in giving its orders. The defendant was in default in performing the contract, even if it were limited to 200 tons. Seventeen tons were yet due on that basis, and the defendant was not entitled to recover on its counterclaim in any aspect of the case.

It remains for us to consider, however, what is the proper construction of the contract as originally made between the parties. The learned judge considered that "the fair interpretation of the correspondence between the parties should be said to be an agreement on the part of the defendant to furnish the plaintiff two hundred to three hundred tons of iron at the price stipulated," and he remarks:

"If that is the true interpretation of the contract, then the defendant performed its contract by furnishing the two hundred tons, and is not in default for the additional one hundred tons."

If we are right in our conclusion as to the effect of the extension of the contract, then the plaintiff did order the 117 tons during the life of the contract. The iron was ordered as wanted, for the giving of the order indicated that the plaintiff wanted it. We construe this ·

contract to mean that the defendant was bound to deliver 200 tons in any event, and that the plaintiff had the option to order 100 tons more during the life of the contract, and that it was not obliged to give the order for that 100 tons at any particular time while the contract was in force. The option was not one to be exercised by the defendant, to deliver 100 additional tons, but belonged to the plaintiff to demand the delivery of 300 tons in all. In the naked case of a party agreeing to furnish and deliver merchandise ranging between two indicated amounts, the option may be with the seller. Such was the case of Disborough v. Neilson, 3 Johns. Cas. 81, where it was held that a contract might be optional with one party and obligatory on the other. In Wheeler v. Britton (Sup.) 17 N. Y. Supp. 749, the proposal was to sell and deliver "not less than thirty-five hundred tons of ice, and four thousand tons, if it holds out." The defendant accepted the plaintiff's offer to deliver 3,500 to 4,000 tons of "good ice if the houses hold that amount." One of the plaintiff's houses burned down. It was decided that the plaintiff might recover damages for the defendant's failure to accept ice after the destruction of the house, that the contract was not restricted to ice stored in the houses, and that the plaintiff was authorized to furnish the minimum amount called for. There the right of election was with the seller, he procuring the ice from other sources. In Standard Sugar Refinery v. Castano (C. C.) 43 Fed. 279, the contract was for the sale of from 700 to 800 tons of sugar. It was held to be filled by a tender and delivery of only 700 tons. There, also, the right of election was with the seller. In the case at bar, however, the option is with the purchaser. The plaintiff received the option. It was for its benefit that it was made, and it was entitled to give orders for the iron, up to 300 tons. The notification contained in the plaintiff's proposal was to the effect that it might require 300 tons, and that proposal, as made, was accepted. There was a plain notification that 300 tons might be required. The contract, as made, was binding on the defendant in all its parts. It cannot be separated into an absolute agreement on its part to furnish 200 tons, and an optional agreement on its part to furnish 100 tons more.

Such being the construction to be given to the contract, the complaint was improperly dismissed. The defendant was not entitled to recover on the counterclaim, and the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.