DeGrasse Paper Company, Appellant, *v.* Northern New York Coal Company, Respondent.

Fourth Department, December 30, 1919.

Contracts — agreement to sell and deliver coal — provision relating to prevention of delivery by strikes, etc., construed — when strike is remote and not proximate cause of breach — option as to amount of coal to be delivered, construed — when option to be exercised by buyer — evidence of demand for delivery — modification of contract.

Although a contract for the future delivery of coal, optional as to amount between certain limits, f. o. b. at a certain mine at a stated price, provided that the contract was made subject to strikes, etc., or other causes beyond the control of either party and that it was not the intention of the agree-

ment to hold either party for damages accruing by failure to carry out the contract when such failure was due to reasons beyond the control of the party in default, the defendant, which failed to deliver all the coal demanded by the plaintiff, cannot escape liability for breach of contract upon the theory that the delivery was prevented by strikes at the mine, when as a matter of fact the mine actually produced enough to fill the plaintiff's order, but the defendant not having any control of the output of the mine, had failed to enter into any contract with the selling agents or other persons which entitled it to the delivery of the plaintiff's coal. Under the circumstances the strike, which only partially prevented the production of coal, was the remote and not the proximate cause of the breach, and the exemption clause of the contract which was drawn by the defendant only covered causes beyond its control which should be proximate and not the remote cause of a breach.

As there was nothing in the contract to indicate for whose benefit the option as to the amount of coal to be delivered was granted and as the contract was prepared by the defendant and so should be construed most strongly in favor of the plaintiff, it was error for the court to instruct the jury that the option as to quantity was with the seller, for it was a question of intent to be determined upon facts and circumstances outside of the contract and the presumption was in favor of the plaintiff.

The construction of a contract of sale calling for a minimum and maximum quantity of the articles sold, as to which of the parties has the right to exercise the option, depends largely upon the facts and circumstances surrounding each contract and it is impossible to lay down a general rule.

Evidence examined, and *held*, that as the correspondence of the parties evinced a desire on the part of the plaintiff to accept the maximum quantity of coal it was for the jury to say whether the plaintiff demanded the delivery of the maximum under its option to do so.

*Held further*, that there was evidence from which the jury might find that the parties agreed to modify the contract by substituting one grade of coal for another, or by canceling the order for the kind specified.

Foote and Lambert, JJ., dissent.

Appeal by the plaintiff, DeGrasse Paper Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Jefferson on the 26th day of October, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 31st day of October, 1918, denying plaintiff's motion for a new trial made upon the minutes.

*Taylor, Jackson, Brophy & Nash* [*Howard Taylor, Delos M. Cosgrove* and *John G. Jackson* of counsel], for the appellant.

*Rockwood & Lark* [*Nash Rockwood* and *William Copeland Dodge* of counsel], for the respondent.

HUBBS, J.:

The defendant is a corporation engaged in the sale of coal as a jobber, with its place of business at Watertown, N. Y. The plaintiff is a paper manufacturing company.

On May 19, 1916, the parties entered into a written contract, which was prepared by the defendant, for the sale of coal, to be delivered f. o. b. mines, during a period of ten months from June 1, 1916, to April 1, 1917, the coal to be Yatesboro coal and the amount from 30,000 to 40,000 tons. The defendant failed to deliver a large portion of the coal contracted for and this action was brought to recover the damage caused to the plaintiff by reason of such failure. The defendant, in its answer, set up a counterclaim for a part of the purchase price of coal delivered by the defendant to the plaintiff, also the defense that the defendant was not liable for damages for failure to deliver coal as agreed because of a so-called " strike clause " contained in the contract.

The jury found in favor of the defendant on said defense, and also upon the counterclaim for the sum of $24,928.91. The amount of the counterclaim was not disputed by the plaintiff.

Four questions are presented on this appeal, as follows:

*First.* Was the defendant excused from performing its contract under the evidence by reason of the " strike clause " contained in the written agreement between the parties?

*Second.* Was the option as to the quantity of coal to be furnished for the benefit of the buyer and to be exercised by it, or was it for the benefit of the seller and to be exercised by it?

*Third.* If the option was for the benefit of the buyer, did it exercise that option?

*Fourth.* Was the part of the contract for mine run coal canceled by consent, or was there an agreement between the parties to substitute nut coal in place of mine run coal for one-half the amount contracted for?

The materiality of the second, third and fourth questions outlined depends upon the determination of the first question in favor of the plaintiff, and it is, therefore, first considered. The clause in question reads as follows: " (6) This contract is made subject to strikes, accidents, car supply, or other causes

beyond the control of either party. The buyer and seller, recognizing the uncertainty of absolute deliveries, it is hereby mutually acknowledged that the intent of this agreement is not to hold either party for damages accruing through failure to carry out the contract when such failure is due to reasons beyond the control of the party in default, but that the material shall be shipped by the seller and accepted by the buyer as per deliveries specified, so far as the labor, the physical conditions existing at the plants of the buyer and seller, respectively, and the ability of transportation companies will permit."

The defendant herein entered into a definite contract for the sale to the plaintiff of a quantity of coal, optional in amount between 30,000 and 40,000 tons, from a certain mine and at a stated price. Plaintiff was bound to accept upon delivery and the defendant to deliver, unless one or the other of the parties should be excused by facts and circumstances which afforded an excuse for breach under clause (6) above quoted. The defendant breached the contract and seeks to avoid liability by reason of strikes and car shortage at the mines from which its coal was to be procured.

The clause is limited by its terms to causes beyond the control of the party seeking to avoid liability.

The causes claimed as beyond its control must have been the proximate and not the remote cause of its breach. (*Niver Coal Co.* v. *Cheronea S. S. Co.*, 142 Fed. Rep. 402.)

Defendant was a jobber. To furnish coal under the contract in question it bought of the Rochester and Pittsburg Coal and Iron Company, which controlled the output of the Yatesboro mine, owned by the Cowanshannock Coal and Coke Company. It nowhere appears that the defendant had any interest in the mine or controlled any specified portion of its output. All that it did, or claims to have done, to put itself in position to fulfill its contract with the plaintiff was to file with the selling agents, the Rochester and Pittsburg Coal and Iron Company, on the date when its contract with the plaintiff became operative, an order for the coal covered by that contract. For the fulfillment of its contract with the plaintiff it was, so far as appears, entirely dependent upon the efforts made by the selling agents and the owners of the mine to make delivery.

It bought no coal to meet its contract, except as deliveries were made on its orders placed with the selling agents, and further excepting certain small quantities held by it in storage. It appears that it made contracts with other parties for coal from the same mine and that the selling agents also sold to other parties. The result was that the output of the mine was greatly oversold. In 1914 the amount of coal shipped from the Yatesboro mine was 1,021,337 tons; in 1915 it was 1,146,744 tons; in 1916 it was 1,108,567 tons, and in 1917 it was 1,058,397 tons. A comparison of the figures given shows only a slight variation in the production of the mine for the period covered by the contract and the two years preceding. The production of the mine is measured by the amount delivered on the cars.

For four months, November, 1916, to February, 1917, both inclusive, there was some labor trouble at the mine and some shortage of cars, which limited the production of the mine for that period to the extent of about 160,000 tons as compared with the same months of 1915–1916.

The defendant was unable to get the selling agents of the mine to ship coal to the plaintiff in the quantities contracted for by the plaintiff, not because there was an insufficient amount produced at the mine, but because the selling agents sold it and shipped it elsewhere.

The defendant, at the time of making the contract in question, was not in a position and it did not thereafter place itself in a position, by adequate contractual relations, to control the output of the mine to the extent of the quantity contracted to be delivered to the plaintiff. It appears that, during the contract period, there was produced at the mine in question coal of the kind contracted for and in quantity many times more than sufficient to satisfy the maximum requirements of that contract. Whatever strikes or car shortage may have existed and however much the production of the mine may have been limited over the production of former years, there was produced much more than sufficient coal to meet the demands of plaintiff's contract. Some other cause for non-fulfillment intervened and became the proximate cause and it is found in the failure of the defendant so to protect itself, by purchase or by adequate contractual relations with third

parties, so that it might obtain the portion of the coal produced which was necessary to the fulfillment of the contract with the plaintiff. A producer, providing he had sold only to the reasonable capacity of his mine, might be relieved upon the happening of the events presented by the evidence in this case, or the defendant might have been relieved as to such proportion of the coal contracted to be delivered as was not produced, but here we have no such situation. There the strike and car shortage would have been the proximate cause, here it was the remote cause, of the breach.

Since the strikes and car shortage were not the proximate cause of the breach they were of no avail to the defendant and it was not excused under the evidence by reason of the strike clause.

Taking up the question of the option as to quantity, we find that there is nothing in the contract itself to suggest for whose benefit it was granted. The court instructed the jury that the option as to quantity was with the seller. It seems to me that such instruction was error. A question of intention is involved, a question to be determined upon facts and circumstances outside of the contract itself. It should be borne in mind that the contract was prepared by the defendant and is to be construed most strongly in favor of the other party. If there be any presumption as to intent, it seems to us that it is more reasonable to say that it was in favor of the plaintiff, whose needs were to be in whole or in part met through the fulfillment of the contract and not in favor of the defendant, whose only advantage would be in the quantity it would have available for the fulfillment of other contracts which it had made or might make and which were of no concern to the plaintiff. We believe that the plaintiff is correct in saying that the defendant undertook to protect itself by clause (6) and that there is no reason for further protection by holding that the option was with the defendant to deliver the minimum amount contracted for at its election.

The construction of a contract of sale calling for a minimum and maximum quantity of the article sold, as to which of the parties has the right to exercise the option, depends very largely upon the facts and circumstances surrounding each contract. It would be useless to try and lay down any general

rule.   Certain rules have been suggested but they are all more or less artificial.   Under certain facts it has been held that the option was to be exercised by the seller.   *(Disborough* v. *Neilson,* 3 Johns. Cas. 81; *Wheeler* v. *Britton,* 17 N. Y. Supp. 749; *Standard Sugar Refinery* v. *Castano,* 43 Fed. Rep. 279; *Pennsylvania Sugar Co.* v. *Czarnikow-Rionda Co.,* 245 id. 913; *Delapierre Co.* v. *Chickasaw Lumber Co.,* 111 Miss. 607; *American Hardwood Lumber Co.* v. *Dent,* 151 Mo. App. 614; 164 id. 442.)

Under the facts in other cases it has been held that the option was to be exercised by the purchaser.   *(Farquhar Co.* v. *New River Mineral Co.,* 87 App. Div. 329; *DuPont* v. *United Zinc Co.,* 85 N. J. L. 416; *Dambmann Bros. & Co.* v. *Lorentz & Rittler,* 70 Md. 380; *Southern Publishing Association* v. *Clements Paper Co.,* 201 S. W. Rep. 745.   See, also, L. R. A. 1918 D. 580, note.)

The reasoning in the cases last above cited is applicable to the situation of the parties in this case.   One of the important considerations in determining the question as to who has the option, is for whose protection was the provision placed in the contract.   It seems to us that in this case the provision was for the protection of the plaintiff.

Upon the third question, we find that the plaintiff made a demand for the fulfillment of its contract, evidenced by Exhibit 17, and that there was other correspondence between the parties which evidenced a desire on its part to accept deliveries at a rate which would have procured for it, if maintained during the contract period, the maximum quantity mentioned in the contract.   As the option was with the plaintiff, as buyer, we believe the question of whether or not the plaintiff exercised its option for the full amount should be submitted to the jury. The plaintiff demanded the fulfillment of its contract.   The option as to the amount was with it and it accepted delivery during a part of the period at a rate which would have furnished the maximum amount.   We believe a jury might say that it exercised its option for the full amount.

There is evidence from which the jury might have found that the parties agreed to modify the contract either by substituting nut coal in place of mine run coal or by canceling the order for mine run coal.   That question was left to the

jury to determine upon all the evidence in the case, without objection.   We do not find any error in that respect.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide event.

All concur, except Foote and Lambert, JJ., who dissent and vote for affirmance.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.