## DOUGLAS FIR EXPLOITATION & EXPORT CO. v. COMYN et al.

(Circuit Court of Appeals, Ninth Circuit. February 27, 1922.)

### No. 3753.

1. Sales ⬪172—Seller held not relieved from obligation to deliver lumber because of substitution of vessels for loading.

Under a contract for the sale of lumber to be delivered f. a. s. a designated vessel, the seller *held* not relieved from its obligation to deliver the lumber at the specified time and place, because, without fault of the purchaser, the vessel named in the contract was not there to receive it, where no additional burden was thereby imposed on the seller, and the fact that the buyer asked and was refused the privilege of substituting another vessel is immaterial, since the naming of the vessel did not constitute a material covenant, so as to make the presence of the ship named a condition precedent to performance.

2. Sales ⬪71(5)—Provision in contract permitting variation in quantity held for benefit of purchaser.

In a contract for the sale and delivery f. a. s. a designated vessel of 1,300 M feet of lumber, "15 per cent., more or less, to suit capacity of vessel," the provision allowing a variation in quantity *held* for the benefit of the buyer, which it might waive, but which the seller could not insist on in an action for failure to deliver, where the vessel named was not tendered and its capacity not shown.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Robert S. Bean, Judge.

Action at law by W. Leslie Comyn and Benjamin F. Mackall, partners doing business as Comyn, Mackall & Co., against the Douglas Fir Exploitation & Export Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The Douglas Fir Exploitation & Export Company appealed from a judgment in an action by Comyn, Mackall & Co. to recover damages for an alleged breach of contract. The contract is evidenced by correspondence as follows:

"Douglas Fir Exploitation & Export Co., 260 California Street,

"San Francisco, Cal. November 2, 1916.

"Messrs. Comyn, Mackall & Co., 310 California St., City—Gentlemen: Sold prior to October 11, 1916. This will confirm sale to you of your cargoes fir f. a. s. mill wharves as follows: W. H. Marston, 1,300 M, October to December, 1917; W. H. Talbot, 1,300 M, October to December, 1917; * * * and two of your own vessels to be named later, with a combined capacity of 1,450 M, both for loading October to December, 1917, cargo to be furnished f. a. s. vessel at loading ports at 60 M daily in Puget Sound, Columbia or Willamette rivers, Gray's Harbor and Willapa, at our option, but one loading port for each vessel, loading port to be named by us in ample time to give vessel instructions before leaving her next previous port of call. Tally and inspection by Pacific Lumber Inspection Bureau at loading port. Certificate to be furnished and to be final. Price $9.50 base G list, less 2½%, 2½% cash. * * * Written in duplicate. Please approve and return one copy.

"Very truly yours,    Douglas Fir Exploitation & Export Co.,

"By A. A. Baxter, General Manager."

"Douglas Fir Exploitation & Export Co., 260 California St., San Francisco, Cal. Acknowledgment of Order. Date December 8, 1916. Our No. 38, page 1. Your order No. ———. Dated, ———. Knappton Mills & Lumber Company. Sold to Comyn, Mackall & Co. for account of ———. To be delivered at

Knappton, Wash., for reshipment to ————. Time of shipment, October to December, 1917. Time of delivery, October to December, 1917. Mill tally and inspection to govern and to be final. * * * This is a confirmation of your order as we understand it. Please check each item with your original order and advise us promptly of any errors. Read carefully the special notes in our price list. Shipment will be made as per his confirmation, irrespective of original order, unless advised to the contrary by you. Sch. W. H. Marston. 1,300,000 feet B. M. 15% more or less to suit capacity of vessel. Price: $9.50 base G list, less 2½% and 2½% for cash. Destination: Australia. * * * Grade: As per G list, P. L. I. B. Certificate to be furnished. * *. * Shipment: October to December, 1917. Terms and conditions: As per G list. Notes.—This price is for delivery f. o. b. mill wharf, Knappton, within reach of vessel's tackles and/or on barges A. S. T. mill wharf, Knappton, Wash."

"Accepted:   Comyn, Mackall & Co.,
                                      "Per J. Claude Daly,
"Dec. 28, 1916."

                                      "October Seventeenth, 1916.

"Messrs. The Chas. Nelson Co., San Francisco, California—Dear Sirs: Confirming the writer's conversation with your Mr. Baxter to-day, we have purchased: 3500 M 10% more or less Oregon. Shipment and/or loading—July to December, 1917. Price: $10.00 per thousand base G list less 2½ and 2½ f. a. s. mill. Port of Loading—It is your option to load the above on Puget Sound, Columbia or Willamette rivers, or on Grays or Willapa Harbor, always provided, of course, that we have the right of loading at these places in charter party. This contract is in duplicate, one of which we have signed, and shall be pleased if you will complete and return the other at your convenience.

"Very truly yours,              Comyn, Mackall & Co.,
                                      "Per C. L. Daly."

                                      "October Seventeenth, 1916.

"Messrs. The · Chas. Nelson Co,, San Francisco, California—Dear Sirs: Referring to the contract inclosed, covering purchase of 3,500 M of Oregon it is probable that we will load under this contract the W. H. Marston October, November, December, and the W. H. Talbot for the same loading. On both of these vessels we have the option of loading on Puget Sound or Columbia or Willamette rivers. On the balance of the contract we may put in two (2) of our own vessels, estimated about 1,450 M capacity, October, November, December, which can load at any of the several ports mentioned in the contract.

"Very truly yours,              Comyn, Mackall & Co.,
                                      "Per C. L. Daly."

The plaintiff in error is a combination of lumber companies, one of which is the Chas. Nelson Company, and upon the entry of the Nelson Company into the combine assumed the obligation of delivering the lumber specified in the contract between the Nelson Company and Comyn, Mackall & Co. In a letter dated November 2, 1916, confirming the sale, the Douglas Fir Company specified that the cargoes were for "fir, f. a. s. mill wharves, as follows: W. H. Marston, W. H. Talbot—and two of your own vessels, to be named later," and in a letter dated December 8, 1916, acknowledging the confirmation of the order Comyn, Mackall & Co. specified: "This price is for delivery f. o. b. mill wharf, Knappton, within reach of vessel's tackles and/or on barges a. s. t. mill wharf, Knappton, Wash." Through no fault of the buyer the W. H. Marston was not available at the time delivery was demanded, and the buyer requested that the lumber be delivered f. a. s. mill wharf or on barges. The seller declined so to deliver on the ground that the contract specified that the lumber was to be loaded on the Marston. The buyer was obliged to purchase the lumber in the open market at a higher price, whereupon it brought this suit.

The main question is whether it was essential to plaintiff's right to delivery that the Marston should be alongside the loading wharf when delivery was demanded. The District Court found that it was immaterial to the seller on

what vessel the lumber was loaded, or what method of loading was followed, provided the seller was not charged with the cost of loading and was not subjected to undue delay.

Chickering & Gregory and McClanahan & Derby, all of San Francisco, Cal., for plaintiff in error.

E. S. Pillsbury, F. D. Madison, Alfred Sutro, H. D. Pillsbury, and Oscar Sutro, all of San Francisco, Cal., for defendants in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge ·(after stating the facts as above). [1] In our opinion the stipulations with respect to the Marston were for the benefit of the buyer. It will not be disputed that the general rule is that where delivery is f. o. b. a vessel, a vessel must be tendered, but that rule is not inconsistent with the view that in a sale f. o. b. vessel it is not material what vessel is tendered, if the stipulation f. o. b.· vessel is primarily a price term, and our construction of the documents here involved is that the phrase f. a. s. mill was a price term. We are strengthened in this by turning to the original sale memorandum of October 17, 1916, which had upon it these words, "Price $10 per M. base G less 2½ and 2½ f. a. s. mill," and the final order which contained these words:

"This price is for delivery f. o. b. mill wharf Knappton within reach of vessel's tackle and/or on barges a. s. t. mill wharf Knappton, Wash."

Doubtless it was in the contemplation of the parties that the lumber would be loaded on the Marston, but even so that fact would not make that particular ship necessary for the performance of the contract, or require the presence of that ship as a condition precedent to the defendant's obligation to deliver the lumber to the plaintiff on the wharf or on barges. If the Marston had been at the mill wharf, and there had been a delivery on the mill wharf, but instead of loading the lumber on the Marston the plaintiff had chosen to load it on barges, or put it in rafts, surely the defendant would have had no ground for complaint. In Meyer v. Sullivan, 40 Cal. App. 723, 181 Pac. 847, where there was a sale of 250 tons of wheat f. o. b. Kosmos Line steamer, and no Kosmos Line steamer could be produced, the buyer demanded delivery in the manner customary on Puget Sound; i. e., in warehouse. The court held that delivery on the steamer was for the benefit of the buyer, and that the seller could not avoid his contract because the Kosmos Line steamer was not there. In that case evidence was introduced as to the use of the terms "f. o. b." and "f. a. s." in contracts, and while "f. a. s." (free alongside) was of less frequent use than "f. o. b.," in both kinds of sales the seller would pay the cost of handling on the dock, and the cost of stevedoring or transferring cargo from dock to ship is absorbed by the shipowner from the freight, in turn to be paid by the buyer. The court said:

"The only distinction between the two kinds of sales appears to be as to the time when the responsibility of the seller ends. In the case of f. a. s. sales it seems to end with delivery on the dock. In the case of f. o. b. sales the responsibility of the seller appears to end when the commodity is on board ship.

The element of cost to either the buyer or seller does not appear to enter into the matter at all."

The court also took the general view that, if there is an agreement to sell goods f. o. b. at a designated place, ordinarily such place will be regarded as the place of delivery, but that the effect of the f. o. b. depends upon the connection in which it is used, and, when used in connection with the words fixing the price only, it will not be construed as fixing the place of delivery. Davis v. Portland Cement Co. (C. C.) 134 Fed. 274; United States Smelting Co. v. American Galvanizing Co. (D. C.) 236 Fed. 596.

In discussing distinctions between a condition precedent and a stipulation, writers are agreed that whether particular stipulations are to be conditions precedent or not depends upon the intention of the parties, to be gathered from the language of the particular instrument. Addison's Law of Contracts, p. 53; Leonard v. Dyer, 26 Conn. 172, 68 Am. Dec. 382; Behn v. Burness, 122 Eng. Rep. (Repr.) 281; Reade v. Meniseff, 7 C. B. 159, 137 Eng. Rep. (Repr.) 57. In the last case there were two contracts wherein defendants agreed to ship at Kronstadt, for plaintiffs, 250 tons and 350 tons, respectively, of meal, shipments to be made at the first open water, allowing reasonable time for the arrival out of the vessel and getting goods to Kronstadt, payment to be made one-third three months from date of bill of lading, but in case the vessel should not arrive in time for the goods to be shipped before June 30th, or if the sellers were not able to procure a ship by that date, sellers should draw for the remainder as specified. Three ships were sent out by the buyers, none of which was of sufficient capacity to take the quantity mentioned in either contract, and the ships arrived at the port of loading at different times. It was claimed by the sellers that there was a breach of a condition precedent, and that the buyers under the contract were obligated to send a single vessel for each cargo. The court held that the buyers could maintain their action, although they did not send out one vessel. The stipulation was held to be for the benefit of the buyers, and not to be an agreement in terms that the plaintiffs should send out a vessel. One of the judges said:

"The use of the words 'the vessel' and 'bill of lading' may be considered reasonably to show the parties contemplated that the plaintiff would send out one ship only to receive the quantity mentioned in each contract. That being the probable state of things they contemplated (but did not stipulate for), they in terms provide for that mode of performance. It seems to me, however, that we should be giving an undue degree of narrowness to the construction of a contract of this sort if we were to hold the buyers bound to adopt that mode of performance as a condition precedent to their right to maintain an action against the sellers for a breach of the contract on their part."

Creswell, J., in concurring, said that it might be inferred that—

"at the time of entering into the contracts the parties contemplated that one ship only should receive each load, but not that the plaintiffs contracted, as a condition precedent, that this should be done."

And here the presence of the Marston at the mill wharf did not add to the ascertainment of either the time or place of delivery, or the quality or quantity of lumber to be delivered, and inasmuch as delivery was f. o. b. mill wharf, or f. o. b. barges, it was not important to the

seller what disposition of the lumber was thereafter made, for the obligation of the seller to perform could not, therefore, be materially affected by the ship being at the wharf.

It is insisted that, because the plaintiff asked and was refused the privilege of substituting ships other than those named, plaintiff had no right of substitution. This argument, we think, is answered by the view that the naming of the vessel did not constitute a material covenant, so as to make the presence of the Marston a condition precedent to performance, wherefore the correspondence requesting such right and the refusal to grant it was immaterial. Neill v. Whitworth, 144 Eng. Rep. (Repr.) 513; Thornton v. Simpson, 128 Eng. Rep. (Repr.) 1151. There is no evidence to justify a conclusion that it was intended by the parties to modify the contract, and there is nothing to show that the defendant asked the plaintiff for a confirmation of the position taken by the defendant whereby it endeavored to fix the right of the parties to the contract.

If we are right in regarding the provision f. a. s. as a price term, McCandlish v. Newman, 22 Pa. 460, cited by plaintiff in error, does not conflict with the view that a buyer may take lumber off the wharf before the vessel is alongside the wharf, or that stipulations concerning the ship may be held to be for the buyer's benefit. Of course, if there were a stipulation that delivery is to be f. o. b. vessel, and such stipulation is a condition precedent to performance, and performance cannot be had without the presence of the ship, the case would be different, as in Maine Spinning Co. v. Sutcliffe & Co., 23 Comm. Cas. 216.

It is urged that the sale was of a cargo to suit the capacity of the Marston, estimating it to be 1,300 M feet, 15 per cent. more or less, and that it was error to hold that the sale was for 1,300 M without reference to the Marston. We need not recite the testimony, but as we read the record the sale was not a cargo sale, and the absence or presence of the ships did not affect either the obligation or the rights of the seller. Undoubtedly the lumber was for export, and the plaintiff wanted to load it on the Marston; but when the contract was made two of the vessels were not known, and we think the contract fixed the quantity without reference to the ships, allowing the buyer to vary by 15 per cent. to suit the capacity of the ships. In September, 1917, it became evident that the Marston could not reach the Pacific Coast by December 31st, and plaintiff, anxious to load the Marston, offered a sum of money for an extension of her loading date. Defendant refused to extend the loading date, and plaintiff permitted her to be loaded, instead of coming back in ballast. For this it received a consideration; but, as the Marston could not make her loading date, further delay could not affect the position of the plaintiff. The offer for an extension of loading date was evidently prompted by a wish, as a matter of economy, to load the Marston; but no other significance can properly be given it.

[2] Plaintiff in error urges that in any event the judgment should be reduced 15 per cent. because the contract was for 1,300,000 feet, 15 per cent. more or less, to suit the capacity of the vessel. But, as

we regard it, the privilege of varying the quantity within the limit of 15 per cent., more or less to suit the capacity of the ship, was one for the benefit of the buyer, and the buyer could waive that privilege. Inasmuch as the vessel was not tendered and the privilege was not exercised, the contract allowed for a variation from the quantity stated, always within the limit.

Plaintiff in error cites a letter written by the defendant in error, dated October 10, 1917, wherein the plaintiff below offered to take delivery of 1,300,000 feet of lumber, 15 per cent. more or less, "at your option if you desire," and saying:

"We give you the option of making the delivery in any manner provided by the contract, to wit, f. a. s. mill wharf Knappton, and/or on barges a. s. t. mill wharf Knappton. We request that you specify as soon as possible the day upon which you will commence delivery, and which option, as to manner of delivery, you elect."

This letter was but a demand for the performance of the contract, and although the demand was limited, so as to give the defendant the option to deliver 15 per cent. more or less, though the contract did not give defendant such right, nevertheless defendant failed to comply with the demand and cannot now maintain any advantage that possibly might have been urged if the privilege offered had been availed of. If the Marston had been tendered and the capacity of the ship was less than 1,300,000 feet, defendant would have been obliged to deliver only that minimum, and was always bound to deliver at least that much. However, as the ship was not tendered, and as the evidence shows the capacity of the Marston was approximately 1,300,000 feet, defendant became obligated to deliver that quantity. Plaintiff in error cites cases where in the contracts considered the options were regarded as with the sellers. But in De Grasse Paper Co. v. Northern N. Y. Coal Co., 190 App. Div. 227, 179 N. Y. Supp. 788, the court well said that it would be useless to lay down any general rule for the construction of a contract of sale calling for a minimum or a maximum quantity of the article sold, as to which of the parties has the right to exercise the option, and expressed the opinion that one of the important considerations in determining the question is for whose protection was the option provision put in the contract. Among decisions to the effect that such an option rests with the buyer are Consolidated Water Co. v. Louisville Herald, 211 Ill. App. 569; Highlands Chemical Co. v. Matthews, 76 N. Y. 145; Du Pont Co. v. United Zinc Co., 85 N. J. Law, 416, 89 Atl. 992.

We find no error in the record, and conclude that the decree of the District Court should be affirmed.

Affirmed.