### CRYSTAL PAPER CO. v. ROBERTSON CO., Inc.

(Circuit Court of Appeals, Sixth Circuit. May 15, 1923.)·

No. 3769.

1. **Sales** ⛬⟶71(5)—**Where maximum and minimum amount specified, question whether purchaser or seller has option to fix amount one of intention.**

Where a contract for the sale of merchandise to be delivered as may be required by purchaser specifies a minimum and maximum as the quantity purchased, there is no hard and fast rule by which to determine which party has the option to fix the amount to be supplied; the ultimate question being one of intention, to be determined largely on the facts and circumstances of each case.

2. **Sales** ⛬⟶71(5)—**Purchaser under contract for manufactured goods held to have option to require delivery of maximum amount.**

Where a contract of sale was by purchaser's written order for "15 to 20 carloads (40,000 pounds to car), * * * shipments as we may require during calendar year of 1916," and the seller was a manufacturer and purchaser a consumer of the manufactured product, *held*, that the purchaser had the option, to the extent of its requirements, to require the delivery of the maximum quantity specified in the contract, and was equally obligated to receive the minimum.

3. **Sales** ⛬⟶152—**Buyer's option to require maximum amount of manufactured goods ordered seasonably exercised.**

Under a contract for the purchase of goods to be manufactured, shipments to be made as required by the purchaser during the succeeding calendar year, and specifying a minimum and maximum number of carloads to be furnished, *held*, that a notice by the purchaser that the maximum quantity would be required, given to the seller in March of said calendar year, was a seasonable exercise of plaintiff's option to require the maximum amount; the contract, though made in the preceding November, not contemplating an exercise of the purchaser's option before the beginning of the year.

4. **Sales** ⛬⟶176(1)—**Seller, failing to make shipments as required, and to object to notice that maximum quantity would be required, waived objections that it was not seasonable.**

Where a contract for the sale of manufactured goods specified a minimum and a maximum amount, shipments to be made in approximately equal monthly installments during the succeeding calendar year, and the seller entirely failed to make any shipment the first month, and failed to make the full contract shipments in the following month, and during the third month accepted plaintiff's standing specifications of goods to be furnished, the seller's failure to object to buyer's notice. soon thereafter, that the maximum quantity under the contract would be required, was a waiver of any objection that such notice was not seasonably made.

---

In Error to the District Court of the United States for the Southern District of Ohio; John W. Peck, Judge.

Action at law by the Robertson Company, Inc., against the Crystal Paper Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Walter M. Shohl, of Cincinnati, Ohio (Dinsmore, Shohl & Sawyer, of Cincinnati, Ohio, on the brief), for plaintiff in error.

Washington T. Porter, of Cincinnati, Ohio, for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. On November 11, 1915, plaintiff's predecessor (whom we shall call plaintiff) gave defendant a written order for—

"15 to 20 carloads (40,000 pounds to car) No. 1 bleached white sulphite waxing tissues [three different specifications of weight, each at a different price], shipments as may require during calendar year of 1916."

This order was accepted by defendant with the modification:

"Shipments are to be made in approximately equal monthly installments during 1916, and you are to furnish us with specifications 30 days in advance of the shipping date. This contract is subject to the usual delays caused by conditions beyond our control."

The first shipment under the order (only 5,722 pounds, or about one-seventh of a car) was made by defendant and received by plaintiff about February 19, 1916. On March 8, 1916, before defendant had made further shipments, plaintiff notified defendant by letter that "we want the full 20 cars on account of this contract," and asked "shipment of a full car of 40,000 pounds at least every 10 days, until further advice." Defendant at once denied plaintiff's right to require 20 cars, saying, however, "when conditions become more settled, if you then decide to take the additional 5 cars, we will give you shipping dates, and will do the very best we can on delivery." Plaintiff continued to insist on its right to 20 cars. In the course of the year defendant shipped plaintiff about 15 cars (a trifle over 600,000 pounds), and on October 25, 1916, in terms denied its obligation to ship, and refused to ship, the whole or any part of the remainder of nearly 200,000 pounds. Upon trial of this action for damages for refusing to furnish this remainder, plaintiff recovered verdict under an instruction of the court that, as matter of law, the contract gave plaintiff (the buyer) an optional right to take 20 cars, and that the option was exercised within the time required by law.

The questions presented here relate only to the correctness of these two holdings, defendant contending that it alone had the option to determine whether more than 15 carloads should be furnished, but that even if plaintiff had such option it was not seasonably exercised. Not only the contract, but all the dealings were by written correspondence, and it is properly conceded that the construction of the contract is one of law and thus for the court.

[1] In the absence of express contract provision therefor, there is no hard and fast rule that the seller, merely because he is such, nor,

on the other hand, that the buyer, simply because he is the buyer, has the option to determine the amount to be supplied. The ultimate question is one of intention, to be determined largely upon the facts and circumstances of each particular case. The practical question is: "For whose protection was the option reserved?" One of the rules sometimes applied (but not the only one) is that the party who is by the agreement to do the first act under the contract has authority to make the choice, in order that he may do that first act. 2 Mechem on Sales, §§ 1170, 1171; De Grasse Paper Co. v. Northern, etc., Coal Co., 190 App. Div. 227, 179 N. Y. Supp. 788, 791, where a number of pertinent authorities are cited; Southern Pub. Co. v. Clements Paper Co., 139 Tenn. 429, 201 S. W. 745. And see notes to last above case, L. R. A. 1918D, 583 et seq.

We think the most prominent authorities relied upon by defendant are in harmony with, even if they do not in terms express, the rule above stated. In Wheeler v. Railroad Co., 115 U. S. 29, 5 Sup. Ct. 1061, 1160, 29 L. Ed. 341, the contract provided for the sale by the railroad company of "1,000 tons old rails" by August 1st, and for "200 to 600 tons" during a period succeeding August 1st. The option as between 200 and 600 additional tons was held to be in the railroad company (the seller), for the reason that "the company was selling old rails. It knew that by August it would have 1,000 tons. It did not know how much more they would have by October 1st. It intended to secure the sale of what it might have, between 200 and 600 tons." The option was thus clearly for the protection of the railroad company.[1] Had the seller been a manufacturer of new rails for consumption by the purchaser different considerations would have been presented. Indeed, in Minneapolis, etc., Ry. Co. v. Rolling Mill Co., 119 U. S. 149, 151, 7 Sup. Ct. 168, 30 L. Ed. 376, involving the purchase by the railway company from the rolling mill company of "2,000 to 5,000 tons 50 pound iron rails, March, 1880, delivery" (presumably to be manufactured by the rolling mill company for use by the railway company) the court said:

"This offer, while it remained open, without having been rejected by the plaintiff or revoked by the defendant, would authorize the plaintiff to take at his election any number of tons not less than 2,000 nor more than 5,000, on the terms specified."[2]

Pennsylvania Sugar Co. v. Czarnikow, etc., Co. (C. C. A. 3) 245 Fed. 913, 158 C. C. A. 201, does not satisfactorily sustain defendant's contention as applied to the facts of the instant case. True, in that case,

[1] In McKell v. C. & O. Ry. Co., 186 Fed. 39, 47, 108 C. C. A. 141, we expressly recognized the ground of the decision in the Wheeler Case as just stated in this opinion. Some reliance was also placed in the latter case upon the fact that as the railroad company was bound to do the first act in performance of the contract, by delivering the iron, it had the option, if there was one, while the purchaser was never in condition to exercise such option.

[2] While this language was in a sense obiter, it is not without significance. Not only was the opinion unanimous (thus including the justice who wrote the opinion in the Wheeler Case), but the writer in the Rolling Mill Case had concurred in the opinion in the Wheeler Case less than two years before.

which involved a cargo contract for sugar to be imported, it was said that but for a provision for a "cargo" a contract for "25,000 to 30,000 bags" of sugar would give the seller an option as to amount between those limits. But the seller was neither a grower nor a manufacturer, but only an importing dealer. Nothing remained to be done by the buyer before shipment, and contracts for goods to be imported have some features not found in the ordinary contract between domestic consumers and manufacturers, having in mind the dominating question of intention. But, apart from these considerations, the force of the decision in the Pennsylvania Case as an authority for defendant in the instant case is, so far as that court is concerned, practically overthrown by its recent decision in Taggert v. Brimfield, 281 Fed. 830 (participated in by two of the three judges who sat in the earlier case), that a contract for the purchase and sale of gravel of specific type, in the minimum of 10,000 tons and maximum of 25,000 tons, within an agreed time and at an agreed price per ton, gave the buyer (who apparently was to use the gravel for manufacturing purposes) the option of determining the amount within the stated limits.[3]

[2] We think the District Court correctly concluded that upon the facts of the instant case the plaintiff buyer was vested with the option in question, at least to the extent of its requirements. The defendant was a manufacturer of paper tissues; the plaintiff was a consumer thereof in the manufacture of a waxed product. Plaintiff made the order in question, and defendant accepted it without reservation as to amount. It is not important that defendant solicited plaintiff to make the order; when made the order became plaintiff's proposal. In the absence of contract provision, fact or circumstance, indicating the contrary (and we think there is such absence), there is a natural presumption that the reservation of option was made for plaintiff's protection. It was vitally concerned in obtaining such amount of material as it should need, and was presumably uncertain as to its exact maximum requirements. This consideration does not fail of importance because the contract was not necessarily for plaintiff's entire requirements for a given period, without reference to such amount as it might receive or for which it was under contract with other manufacturers. Defendant knew what it could normally produce. It protected itself from failure to furnish through causes beyond its control by special provision therefor.

___

[3] The court said: "Contracts of this general type are common, where a manufacturer has to provide in advance for a supply of some needed material, the exact amount of which he cannot then specify. In this uncertainty, he names a minimum, which on his part he positively agrees to take, and he names a maximum up to, but not beyond, which the seller is bound to furnish. In this way, both parties are protected. The seller has insured an absolute sale of a definite, minimum amount, which the buyer is bound to take, no matter whether he needs it or not. So, also, in consideration of such present minimum sale, which the seller then makes, he agrees on his part to furnish a further quantity up to the maximum, if the buyer requires it. So, in construing the present contract, every provision of it is given effect, and the obligation of Brimfield to sell up to the maximum and of Taggert to buy up to the minimum stand on a plane of reciprocal equality."

De Grasse Paper Co. v. Northern, etc., Co., 190 App. Div. 227, 179 N. Y. Supp. 791.

So far as the doctrine of "first actor" may be thought important, it is to be noted that shipments were not to be made upon defendant's initiative, but not until plaintiff should furnish the specifications, "30 days in advance of the shipping date," which date was to be determined by the provisions "shipments as we [plaintiff] may require during the calendar year of 1916," subject only to the limitation that they be made "in approximately equal monthly installments." We think the conclusion we have reached is supported by abundant and considered authority. The following citations, in addition to those already discussed, are valuable and in point: Southern Pub. Co. v. Clements Paper Co., 139 Tenn. 429, 201 S. W. 745, L. R. A. 1918D, 580; De Grasse Paper Co. v. Northern, etc., Coal Co., 190 App. Div. 227, 179 N. Y. Supp. 788, 791; Farquhar v. New River Mineral Co., 84 N. Y. Supp. 802; DuPont v. United Zinc Co., 85 N. J. Law, 416, 89 Atl. 992; Douglas Fir, etc., Co. v. Comyn (C. C. A.) 279 Fed. 203, 207, 208. And see Dambmann v. Lorentz, 70 Md. 380, 17 Atl. 389, 14 Am. St. Rep. 364. We have not attempted to discuss all the authorities cited by defendant. Those to which we have not referred are either not persuasive or are distinguishable in their important facts from the case before us. Some of them are discussed in certain of the cases we have cited.

[3, 4] We think the option was exercised "within the time required by law," which means within a reasonable time. The facts were undisputed, and there was no room for differing inferences therefrom. The question was thus one of law. Defendant contends that plaintiff's notice of option was unseasonable because not made before the commencement of the period during which shipments were to be made, and counsel cite Xenia Gas, etc., Co. v. Gardner, 26 Ohio St. 584, and Topping v. Root, 5 Cow. (N. Y.) 404. Assuming, for the purposes of this opinion, that these decisions are correct upon the facts involved, they are not persuasive as applied to the situation here. In the cases cited the shipments were to extend over short periods, two months in one case, three months in the other. In one of them the seller had the right to deliver the entire product on the first day of the first month, but the option was not exercised until the buyer had received and paid for practically the full minimum. In neither case was the seller to await shipping orders as to amounts or otherwise. In the instant case not only were the shipments to continue over a period of a year; but nothing was to be shipped except on plaintiff's specifications made from time to time during the year, to meet plaintiff's requirements, and only 30 days in advance of shipping dates. We think it clear that the contract did not contemplate exercise or notice of option before the beginning of the year. Compare Farquhar v. New River Co., 87 App. Div. 329, 84 N. Y. Supp. at page 804; Taggart v. Brimfield, supra. Moreover, we agree with the District Judge that if earlier exercise of option would otherwise have been required, such exercise was waived by defendant through its entire failure to make any shipment in January, by its failure to make the full contract shipments in February, its acceptance of

plaintiff's standing specifications of weight of paper made on March 2d, and its failure to object to the notice of option given on March 8th as not seasonably made.

The judgment of the District Court is affirmed.