HENRY B. BARDEN, Plaintiff, *v.* IROQUOIS PULP AND PAPER COMPANY, Defendant.

Supreme Court, Washington County, July 2, 1932.

*Milford D. Whedon* [*Horatio Thomas* of counsel], for the plaintiff.

*William E. Bennett* [*Stephen E. Keating* of counsel], for the defendant.

ROGERS, J. The parties made two contracts for the sale and delivery of pulp wood. The wood provided for in the first contract was delivered and paid for and a substantial amount of the wood provided for in the second contract was delivered and paid for. When each installment delivery was made the defendant culled out a small percentage of wood not in accordance with the specifications,

and deducted from the invoice of the shipment the contract price of the culled wood. Numerous complaints were made by the defendant that the shipments contained knotty wood, and on November 10, 1930, the defendant wrote plaintiff: " If you can ship us wood that will answer our specifications, we will be glad to receive it, but any which does not answer, we will cull out and reject." On November 27, 1930, plaintiff replied as follows: " As you state in your letter of November 10th, that if I ship you wood that will answer your specifications you will be glad to receive it, but that any wood that doesn't answer to your specifications — that you will cull out and reject. I think that is perfectly fair." On January 7, 1931, the defendant rejected three carloads of wood without examining it, or attempting to cull out any wood of inferior quality and notified the plaintiff by telegram and letter to stop shipments and that it would accept no further deliveries under the contract. The plaintiff made an offer to continue shipments which was refused.

It was the defendant's duty to receive the shipment and cull out the inferior wood as agreed. Even if such an arrangement had not been made by the parties it was the defendant's obligation to receive the shipment in the first instance and if the percentage of inferior wood was substantial it might then reject the individual shipment. It could not rightfully declare a rescission of the contract without first giving the plaintiff an opportunity to ship them wood that fulfilled the specifications.

Section 126 of the Personal Property Law provides: " 2. Where there is a contract to sell goods to be delivered by stated installments which are to be separately paid for, and the seller makes defective deliveries in respect of one or more installments, or the buyer neglects or refuses to take delivery of or pay for one or more installments, it depends in each case on the terms of the contract and the circumstances of the case whether the breach of contract is so material as to justify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken."

In *Cahen* v. *Platt* (69 N. Y. 348) the court said (at p. 350): " The fact that the glass delivered and received on the contract was inferior, did not give them the right to repudiate the contract altogether. They could demand better glass, and when the plaintiff offered to deliver the balance, if it was inferior, they could refuse to accept it. But if the plaintiff was ready and willing to deliver for the balance such glass as the contract called for, they were bound to receive it. Here the plaintiff requested them to take the

balance of the glass, and they refused to take any more, and thus repudiated and put an end to the contract. There was no proof that the plaintiff insisted on delivering inferior glass, or that it was not ready or willing to deliver glass of the proper quality. They did not take the position that they were willing to receive glass of the approved standard quality, but refused to take any more glass under the contract. There was, therefore, such a breach of contract as entitled the plaintiff to recover such legal damages as he sustained by the breach." (*Grumbinsky Bros.* v. *Smalley,* 203 App. Div. 661; *Lowison* v. *Newman,* 201 id. 266; *Mason* v. *Smith,* 130 N. Y. 474.)

" Frequently by the terms of a contract a promisor is given a period of time at any moment of which he may make the agreed performance. Such a contract will not be broken until the agreed period has elapsed. This is true even though the promisor may have made a defective attempt to perform at an earlier date." (3 Williston Cont. 2234.)

" Where the buyer of goods to be delivered in installments accepts an installment inferior in quality to the requirements of the contract, with knowledge of such fact, according to the weight of authority he cannot assert this breach of contract by the seller as a justification for his refusal to receive other installments which in quality fulfill the terms of the contract, nor can he urge such breach as a ground for rescinding the contract in toto." (29 A. L. R. 1517.)

In view of these authorities to the effect that the defendant did not have a legal right to terminate the contract, it is unnecessary for the court to decide whether or not the importation of Russian pulp wood and the falling market value of native pulp wood induced the cancellation. Nor is the evidence material regarding the custom in the trade for the buyer to accept shipments containing a small percentage of imperfect wood and cull out the same, and adjust the invoice accordingly.

The May 27, 1930, contract was for 3,000 to 5,000 cords. The parties differ as to which one had the election as to the amount of wood to be delivered. Construing the language alone the option was with the defendant to exercise by giving reasonable notice to the plaintiff that it desired the extra quantity. In *Farquhar Co.* v. *New River Mineral Company* (87 App. Div. 329) it is said: " We construe this contract to mean that the defendant was bound to deliver 200 tons in any event, and that the plaintiff has the option to order 100 tons more during the life of the contract, and that it was not obligated to give the order for that 100 tons at any particular time while the contract was in force. The option was

not one to be exercised by the defendant, to deliver 100 additional tons, but belonged to the plaintiff to demand the delivery of 300 tons in all."

The case of *E. I. Dupont De Nemours Powder Co.* v. *United Zinc & Chemical Co.* (85 N. J. L. 416) is cited in Williston on Sales, paragraph 464. The court in that case said: " The contract was not an absolute contract to sell and buy three thousand tons; the buyer was under no obligation to take more than two thousand tons it had the option to order more up to a total of three thousand tons, but until it had given the necessary orders there was no contract for the excess over two thousand tons; the minds of the parties had not met either as to the quantity or quality."

The question arises whether defendant's letter to plaintiff dated June 13, 1930, is a sufficient election to take the additional cordage. In this letter it is stated: " Kindly advise just what progress you are making in obtaining the wood against the 3000–5000 cord contract which was given you on May 27, 1930.

" We are drawing up contracts to cover next year's supply of pulp wood and would like to know just what cordage we can expect to receive on this order."

The plaintiff replied on July 9, 1930; " I will do my best to get all contracts closed on or before September — 6000 cords."

Nothing further occurred between the parties as to the number of cords to be shipped. If the plaintiff had replied to the defendant's letter unequivocally and stated that he would furnish 6,000 cords, and if the defendant had acquiesced in that statement, then there would have been an election on the part of the defendant to take the additional 2,000 cords. The minds of the parties, however, never met as to the extra cordage. The defendant did not agree to accept it, nor did the plaintiff agree to deliver it.

As to the 181.07 cords shipped, stopped in transit by defendant and not accepted, it was agreed on the trial that plaintiff's damages amounted to $1,510.95. There remain 1,487.55 cords of the 3,000 cords which the defendant contracted for that it has refused to accept. For this quantity the plaintiff is entitled to recover as damages the difference in the contract price and the market value at the time and place of delivery. This difference is $4 per cord, amounting to $5,950.20. The plaintiff should recover altogether the sum of $7,461.15 and interest thereon as provided by section 480 of the Civil Practice Act.