## KEYSTONE STEEL & WIRE CO. v. KOKOMO STEEL & WIRE CO.

(Circuit Court of Appeals, Seventh Circuit. July 29, 1924.)

No. 3166.

1. **Appeal and error** ⊜⟶5—**In action tried by court, ruling on question of law is reviewable by writ of error.**

The ruling on a motion made at the close of the evidence in an action tried without a jury, which presents a question of law, is reviewable by writ of error.

2. **Appeal and error** ⊜⟶849(2)—**In action tried by court, ruling on sufficiency of evidence is reviewable.**

The ruling on the sufficiency of the evidence to sustain or defeat liability is reviewable on writ of error, even though the parties stipulate to waive a jury trial.

3. **Sales** ⊜⟶71(5)—**First actor under contract has the right to determine between the minimum or maximum quantity specified in the contract.**

Under a contract for sale of "9,000 to 11,-000" tons of steel rods, to be shipped in monthly installments during a stated time, which required the buyer to give specifications of shipments 2 days before time of shipment, the buyer, as the first actor, *held* to have the option of determining between the minimum and maximum quantities specified.

In Error to the District Court of the United States for the District of Indiana.

Action at law by the Keystone Steel & Wire Company against the Kokomo Steel &

Wire Company. Judgment for defendant, and plaintiff brings error. Reversed, with directions to grant new trial.

See, also, 275 Fed. 794.

The parties entered into a contract for the purchase of steel rods, which is herewith set forth in hæc verba:

"Kokomo, Ind., May 21, 1915.

"Keystone Steel & Wire Company, of Peoria, Ill., hereby purchases and agrees to receive from the Kokomo Steel & Wire Company, a corporation, and the said Kokomo Steel & Wire Company hereby sells to Keystone Steel & Wire Company:

"Quantity and Description.—9,000 to 11,-000 gross tons basic rods.

"Shipments prior to May 31, 1916, in approximately equal monthly shipments.

"Prices and Terms.—From July 1, 1915, to November 30, 1915, $27.08 per G. T. f. o. b. Peoria. For December, 1915, and January, 1916, $27.58 per G. T. f. o. b. Peoria. From February 1, 1916, to May 31, 1916, $28.08 per G. T. f. o. b. Peoria.

"The prices December 1, 1915, to May 31, 1916, will be subject to reduction should conditions warrant. These prices are based on a freight rate of $3.58 G. T. Pittsburgh, Pa., to Peoria, Ill., and will be subject to freight advances or decline.

"Terms 30 days net; one-half of 1 per cent. 10 days.

"This cancels contract dated May 14, 1915.

"Payment in U. S. gold coin or its equivalent in U. S. currency.

"Each month's shipments to be treated as a separate and independent contract, but if buyer fails to fulfill terms of payment under this or other contracts, seller may defer further shipments until payment is made, or may cancel this contract, at his option.

"Strikes, differences with workmen, accidents to machinery, or other contingencies beyond the control of the seller, to be sufficient excuse for any delay in shipment traceable to such cause.

"Within a reasonable time after the removal of such contingency, seller is to complete deliveries as rapidly as possible.

"The purchaser shall give to the seller specifications of goods covering shipments, not less than ten days before time of shipment.

"Guarantee.—The seller agrees to replace defective material, but will not allow or pay any claims for labor or damage resulting from such defective material.

"Claims.—All claims as to quantity or quality must be made promptly after receipt of material.

"Accepted:

"Kokomo Steel & Wire Company,
        "[Signed] S. S. Shambaugh.

"Accepted:

"Keystone Steel & Wire Company,
        "[Signed] P. W. Sommer."

During the period covered by the contract the price of steel rods rose rapidly, and a disagreement occurred between the parties respecting the tonnage plaintiff was entitled to receive under the contract. Defendant contends it was not required to deliver more than 9,000 tons, and plaintiff insists it was entitled to 11,000 tons. This action is to recover damages for defendant's failure to deliver the tonnage demanded by plaintiff.

The cause was tried without a jury, and at the close of the testimony plaintiff's attorney moved the court "to find the issues for the plaintiff, for the reason that the evidence offered on behalf of plaintiff is sufficient as a matter of law to maintain its action, and there is no substantial evidence offered on behalf of defendant to support any defense to plaintiff's cause of action, or to support a finding for defendant."

The motion was denied, and judgment rendered for defendant. A detailed statement of the facts bearing upon defendant's liability is set forth in the opinion.

Chester F. Barnett, of Peoria, Ill., for plaintiff in error.

Conrad Wolf, of Kokomo, Ind., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). [1, 2] Because of the waiver of a jury trial, defendant argues that plaintiff's assignments of error are not reviewable. This urge is rejected, first, because the motion made at the close of the trial was intended and understood to present a question of law which was reviewable by a writ of error (Quarles v. City of Appleton [C. C. A.] 299 Fed. 508); and, second, because the sufficiency of the evidence to sustain or defeat a liability is a ruling that may be reviewed upon writ of error even though the parties stipulate to waive a jury trial.

Respecting liability, it appears that the evidence is not in conflict. The contract was made May 21st, but the price and terms provision indicated it became effective

July 1st. This conclusion is confirmed by letters which passed between the parties at or about .the time the agreement was executed. Beginning with July 29th, and each month thereafter, plaintiff notified the defendant to ship it one thousand tons under its contract. These orders were acknowledged and accepted. At the bottom of defendant's letters appears a statement of the number of tons ordered, the number of tons shipped, and the balance due. As illustrative, we quote from two letters:

"Kokomo, Ind., December 20, 1915.

"Keystone Steel & Wire Co., Peoria, Ill.— Gentlemen: We have your favor of the 18th, referring to our invoice of December 10th, covering I. C. car No. 45833. We admit that this car should have been applied on your order for November shipment, but as our mill applied this on the order for December shipment, we did not think it would make any material difference if we invoiced it on the December price. You understand that we entered up 1,000 tons for shipment in November and also 1,000 tons for shipment in December, and when they applied shipment on the December order, we must invoice in on the December price. You will, however, receive the 1,000 tons on the November shipment, and we have instructed our mill hot to apply any shipment on the December tonnage until after they have finished up the November order."

On December 31st, defendant wrote plaintiff, stating among other things:

"It would be impossible for us to say at this time what tonnage we would give you in the month of January, but we are going to do our very best; you can depend on this. The weather conditions this week have been very bad with us from every standpoint, and we presume that all of the manufacturers have been up against some of the same thing.

Nov. 1,000 shipped 409 unshipped 591
Dec. 1,000   "   71  . "   929
Jan. 1,000   "   0   "   1,000"

It was after this letter of December 29th and various letters of like purport had passed between the parties that defendant announced in a letter to plaintiff that,

"It looks as though we are going to be compelled to hold you to the minimum amount of the contract rather than the maximum amount, but we are going to do our best to clean up to the minimum amount."

Plaintiff promptly challenged defendant's right to ship less than one thousand tons per month, and the subsequent correspond-

ence between the parties related to their different and respective constructions.

[3] As we construe this contract, plaintiff, as the first actor thereunder, had the option of determining whether the minimum or maximum amount (9,000 or 11,000 tons) should be shipped. Defendant could not fill an order until the size and kind of "basic rods" was designated by plaintiff, and the contract by the third paragraph from the bottom so provided. Not only do the surrounding circumstances support the view that plaintiff, not defendant, had the option of designating the quantity (subject to the maximum and equal monthly shipments provisos), but the letters that passed between them clearly show such to have been the understanding of the parties. Supporting the conclusion that the first actor had the right to make the election, see Dambmann Bros. & Co. v. Lorentz & Rittler, 70 Md. 380, 17 Atl. 389, 14 Am. St. Rep. 364; E. I. Dupont De Nemours Powder Co. v. United Zinc & C. Co., 85 N. J. Law, 416, 89 Atl. 992; Southern Pub. Ass'n v. Clements Paper Co., 139 Tenn. 429, 201 S. W. 745, L. R. A. 1918D, 580; Dimmick v. Banning, Cooper & Co., 256 Pa. 295, 100 Atl. 871.

But it is contended that plaintiff made its election the first month and chose the minimum (9,000 tons). We do not so view the evidence. After the contract was executed, and before July 1st, three orders were given—one, May 24th, No. 19, for 200 tons of "No. 5 soft Bessemer rods"; one, No. 20, May 24th, for 400 tons "No. 5 soft Bessemer rods"; one May 29th, No. 26, for 200 tons "No. 5 soft Bessemer rods." On July 2d an order (No. 36) for 800 tons "No. 5 soft Bessemer rods" was given. Thereafter, at or near the end of each month, plaintiff ordered for the next succeeding month's delivery 1,000 tons.

It is from these orders that defendant must find its support for its contention that only 800 tons was ordered for the first month, and therefore plaintiff was bound by its election to take the specified minimum amount for the year. The letters that passed between the parties respecting the first orders are somewhat illuminating. Plaintiff wrote on May 24th:

"Herewith we hand you our orders Nos. 19 and 20. No. 19 for 200 tons we will ask you to ship out at once, and we hope you will be able to get this tonnage under way this week. No. 20 we would like to have shipped at your convenience during the month of June. This tonnage we calculate we will not need for actual consumption during our

present fiscal year, which ends July 1st, as we are expecting to shut down a part of the month of June, but in order to enable us to give you some tonnage for June shipment, and in order that the same may be on hand promptly on July 1st, when we expect to resume operations in full force, we are asking you to ship this tonnage during the month of June, and, in order that we may not be obliged to inventory the same, we ask that the title to the goods may remain in you until July 1st, at which time we would ask you to bill the goods to us in the usual manner.

"If it should happen that our requirements for June should exceed our expectations, and we should find it necessary to use during June a part of the rods which we are now buying for our July requirements, we will in that case ask you to bill such portion to us under June date.

"This is the arrangement which we have had for several years past with several of the mills which furnish us rods and which has worked out very satisfactorily with us, and which we believe is no hardship on the sellers."

To this letter defendant replied:

"We received your letter of the 24th, inclosing your orders Nos. 19 and 20 and we desire to state that we will make shipment of the 200 tons on order No. 19 yet this week, and we will also take care of the June shipments, and give you July 1st dating on these invoices in accordance with your statement to the writer when in Peoria last Friday, and also in accordance with your letter.

"Upon receipt of your telegram to-day relative to rod shipments, we advised you that we had completed order No. 13 this date and that we would make shipment of No. 19 yet this week.

"Thanking you for these specifications, we beg to remain. * * "

We think the fair and proper construction of these letters and orders to be that orders No. 19 and No. 36 (1,000 tons) were chargeable to the July (the first month's) shipment, and that the tonnage called for in orders Nos. 20 and 26 were to be shipped under the contract, but without specific application. Certainly we would not be justified in finding under these circumstances that plaintiff elected to take the minimum amount obtainable under the contract. On the other hand, for such shipments defendant should be credited generally under its obligation to deliver a quantity not exceeding 11,000 tons.

No June shipments were contemplated by the contract for the "Prices and Terms" provision contemplated July 1st as the beginning of the contract. The deliveries ended the succeeding year on May 30th, and as shipments were to be made in "approximately equal monthly shipments," the conclusion seems unavoidable that the parties intended to cover a period of 11 months, beginning July 1st, and ending May 31st, and that "each month's shipments to be treated as a separate and independent contract," and, further, the plaintiff was to order for each month approximately equal amounts.

As has been pointed out, this was done (and defendant acquiesced therein), excepting only as to the first four orders. As to these, the accompanying letters showed two of them, aggregating 1,000 tons, were strictly applicable to the month of July, while the other two orders, calling for 600 tons, were applicable generally to the terms of the contract, and were governed by its terms.

It has been suggested that the testimony before us is such as to make it possible for this court to determine the exact amount of damages which, under this construction of the contract, the plaintiff is entitled to recover. But our examination of the evidence leaves us uncertain as to certain items, and we conclude that it would be better and safer to reverse and remand the cause for a new trial, in order that both parties may be heard respecting the amount of damages recoverable.

The judgment is reversed, with directions to grant a new trial.