JONESBORO, LAKE CITY & EASTERN RAILROAD
COMPANY *v.* MADDY.

Opinion delivered March 12, 1923.

1. CARRIERS—NOTICE OF CLAIM OF INJURY TO LIVESTOCK.—A provision in a contract of shipment of live stock that, as a condition precedent to a claim for loss or injury during transportation, notice thereof should be given by the shipper or agent in
charge thereof before removal of the livestock has no application where a shipment of hogs was not in charge of the shipper
or his agent, and it was not delivered to the consignees, and was
never carried to the destination.

2. CARRIERS—NEGLIGENCE.—In general, a carrier is liable for the
negligence of its servants during the course of their employment, and if they go on a strike, abandoning the performance of
their duty and causing delay, the carrier is liable.

3. COMMERCE—INTERSTATE SHIPMENTS.—Interstate shipments are
governed by the acts of Congress and the decisions of the
United States Supreme Court construing same.

4. CARRIERS—LIABILITY FOR LOSSES.—At common law carriers were
liable for any loss or damage which resulted from human
agency, or from any cause not the act of God or the public
enemy; but a carrier may by fair and reasonable agreement restrict its liability to losses which are the proximate result of
strikes on its own road, or that of connecting carriers, where
the loss is not occasioned by its negligence or where it could not
by reasonable diligence have prevented the loss.

5. CARRIER—EXEMPTION AGAINST NEGLIGENCE.—A carrier cannot
exempt itself from liability on account of its own negligence.

6. CARRIERS—EXEMPTION FROM LIABILITY—INSTRUCTION.—In an action against an initial carrier for loss to an interstate shipment of
hogs never delivered to consignee but turned over by an intermediate carrier to another, it was error to limit defendant's contract right to exemption from liability by reason of strikes to a
finding that delay was occasioned solely by a strike of employees
of a terminal carrier, as a strike on any of the connecting carriers would, under the contract, release the initial carrier from
liability except in cases of negligence with regard to averting
the loss on its part or on the part of any of its connecting carriers.

Appeal from Craighead Circuit Court, Lake City
District; *W. W. Bandy,* Judge; reversed.

C. P. Maddy sued the Jonesboro, Lake City & Eastern Railroad Company to recover damages on account of the negligent delay and misdelivery of a carload of hogs shipped over the defendant's line of railroad to East St. Louis, Ill.

C. P. Maddy, the plaintiff, was a witness for himself. According to his testimony, in 1920 he lived at Lake City, Ark., and was engaged in buying and shipping live stock. On the 6th day of April, 1920, he shipped a carload of hogs over the Jonesboro, Lake City & Eastern Railroad Company from Lake City, Ark., to Davis & Daley, at East St. Louis, Ill. There were 114 hogs in the car, and they were in good condition. The plaintiff loaded the hogs in the car carefully, and they should have reached their destination two days after they left Lake City. The hogs never reached their destination. The Swift Packing Company took charge of them on the 21st of April, 1920, and sold them on the 22d inst. The plaintiff was charged $142.50 for the feed of the hogs in transit, and if they had gone to destination without delay a proper feed bill would have been only $5. One of the hogs died in transit, and the others fell off in weight on account of the delay in their shipment. The plaintiff went on a passenger train to St. Louis, Mo., and learned that the hogs were at Dupo, Ill. Nine or ten days after they were shipped, the railroad company wanted to deliver the hogs to the consignees at Dupo and have them bring them to their destination in trucks. The consignees declined to receive them at Dupo, and the railroad company then took the hogs to Valmeyer, about twenty miles below Dupo.

J. E. Davis and Mike Daley, the consignees, were also witnesses for the plaintiff. Their testimony was substantially the same. According to their testimony, a representative of the Missouri Pacific Railroad Company asked them if they could accept the hogs at Dupo and carry them to their destination in trucks. They told the

railroad company that they could not do this and could not accept the hogs at Dupo. Dupo is a station about ten or twelve miles out from the National Stock Yards in East St. Louis, and Valmeyer is a station on the Missouri Pacific Railroad. The hogs were never delivered to consignees, but were finally delivered by the railroad company to Swift & Company in East St. Louis, Ill. The railroad company said that the delay in shipment and the misdelivery of the hogs was due to a strike of the switchmen on the Terminal Railroad Company and some other railroads which connected with it. The Terminal Railroad Company makes 90 per cent. of all the deliveries to the National Stock Yards in East St. Louis, and would have made the delivery of the hogs in question had they been delivered to the consignees according to the terms of the bill of lading. The amount of the shrinkage of the hogs and the value due to their delay in carriage was established by the plaintiff.

According to the testimony of the defendant, the Missouri Pacific Railroad Company carried the hogs to Dupo, which is the connecting point between its road and the Terminal Railroad Association. The delay in the shipment and the misdelivery of the hogs was due to a strike of the switchmen of the Terminal Railroad Association and on the Missouri Pacific Railroad Company. The railroad company made every effort to deliver the hogs to the consignees. The Terminal Railroad Association was the carrier which would have delivered the hogs to the consignees had the strike not prevented it. The delivery was prevented because the Terminal Railroad Association could not get sufficient switchmen.

The particular provisions in the contract of shipment involved in this appeal are paragraphs 6 and 8, which are as follows:

"Paragraph six. The shipper hereby assumes and releases the company from risk of injury or loss which may be sustained by reason of any delay in such transportation of said stock, or injury thereto, caused by any

mob, strike, threatened or actual violence to real or personal property, or by the refusal of the company's employees to work or otherwise, or the failure of machinery, engines or cars, or by injury to tracks or yards, storms, washouts, escape or robbery of any of said stock, overloading cars, fright to animals, or crowding one upon another, or from any and all other causes whatever, the liability of the carrier or any fact essential thereto in any instance or case shall not be presumed, but the burden of establishing such liability is assumed by the shipper in the event of a suit."

"Paragraph eight. In order that any loss or damage to be claimed by the shipper may be fully and fairly investigated and the facts and nature of such claim or loss preserved beyond dispute and by the best evidence, it is agreed that, as a condition precedent to his right to recover any damages for any loss or injury to said stock during the transportation thereof, or at any place or places where the same may be loaded or unloaded for any purpose on the company's road, or previous to loading thereof for shipment, the shipper or his agent in charge of the stock will give notice in writing of his claim therefor to some officer of said company, or to the nearest station agent, or if moved from the place of destination above mentioned, or from the place of delivery of the same to the consignee, and before such stock shall have been slaughtered or intermingled with other stock, and will not move such stock from said station or stockyards until the expiration of three hours after the giving of such notice; and a failure to comply in every respect with the terms of this clause shall be a complete bar to any recovery of any and all such damages. The written notice heretofore provided for cannot and shall not be waived by any person except a general officer of the company, and he only in writing. Nor shall any such damage be recoverable unless written claim therefor shall be presented to the company within ninety-one days after the same may have occurred."

The plaintiff did not give the notice to the railroad company contemplated by paragraph 8 of the shipping contract.

The jury returned a verdict for the plaintiff in the sum of $508.50, upon which judgment was rendered.

The defendant railway company has duly prosecuted an appeal to this court.

*Eugene Sloan,* for appellant.

Giving notice of damage to live stock before removal from destination is condition precedent to recovery. *St. L. & S. F. Rd. Co.* v. *Pierce,* 82 Ark. 353; *K. & A. V. Rd. Co.* v. *Ayers,* 63 Ark. 331; *St. L. & S. F. Ry. Co.* v. *Hurst,* 67 Ark. 407; *Hofer* v. *St. L. S. Ry. Co.,* 101 Ark. 310; *M. & N. A. Rd. Co.* v. *Ward,* 111 Ark. 102. Court should have directed verdict under paragraph 6 of contract, a reasonable requirement and evidence being undisputed. *So. Express Co.* v. *Caldwell,* 21 Wad. 264; 22 U. S., L. ed. 556; *G. C. & S. F. R. Co.* v. *Levi,* 76 Tex. 337; 8 L. R. A. 323; *Pittsburgh etc. R. Co.* v. *Hazen,* 84 Ill. 36; 25 Amer. Rep. 422; 4 R. C. L., pp. 743, 212; 10 C. J. pp. 293, 415. Instructions 2 and 3 for defendant should have been given. Others argued incorrectly given, especially No. 3, releasing carrier from liability if injury caused from strike on one road but liable if from combined strike on two.

*J. F. Johnson* and *Basil Baker,* for appellee.

Shipping contract no more than receipt for shipment under facts of case and terms and conditions fixed by law. *Railway* v. *Cravens* (1892), 57 Ark. 112; *St. Louis-S. F. Ry. Co.* v. *Wells* (1907), 87 Ark. 469; *St. L. & S. W. Ry. Co.* v. *Haynie* (1915), 120 Ark. 26. No notice required of claim for damages, shipment never having been delivered at destination nor to consignee at all. Cases cited by appellant distinguished. Interstate shipment controlled by Federal law. Barnes' Federal Code, § 7976, 1921 supp. Carrier is not allowed to contract against liability for its negligence.

HART, J., (after stating the facts). It is first insisted by counsel for the defendant that the court should have directed a verdict in favor of the railway company because the notice required by paragraph 8 of the live stock contract of shipment was not given by the plaintiff.

The live stock contract in question involves an interstate shipment of hogs. The Supreme Court of the United States has held that a stipulation in a contract which is governed by the Carmack Amendment for the interstate transportation of live stock releases the carrier from all loss or damage unless a written claim therefor is made on the carrier's freight claim agent within ten days after unloading the live stock. *St. L. I. M. & S. R. Co.* v. *Starbird,* 243 U. S. 592; *Erie Railroad Co.* v. *Stone,* 244 U. S. 332, and *Southern Pacific Company* v. *Stewart,* 248 U. S. 446.

We do not think, however, the facts and circumstances as they appear from the record bring this case within the principles of law decided in the cases just cited. In the present case the hogs were not in charge of the shipper or his agent, and they were never delivered to the consignees. The undisputed evidence shows that the railroad company delivered the hogs to another company than the consignees, and that they were never carried to their destination. Hence the provisions of paragraph 8 of the contract of shipment do not apply, under the facts presented by the record.

It is next contended that the court erred in giving instruction No. 3, which is as follows:

"You are instructed that, if you find from the evidence that the delay in the delivery at St. Louis was occasioned solely by a strike on the part of the employees of the Terminal Railroad Company in St. Louis, then your verdict should be for the defendant. But, on the contrary, if you find the delay was the result of the combined strike of the employees of the Terminal Railroad Company and the employees of the Missouri Pacific Railroad Company, then that would be no defense in this ac-

tion on the part of the railroad, and your verdict should be for the plaintiff.''

The contention of counsel for the defendant that the court erred in giving this instruction is based upon paragraph 6 of the contract of shipment, which is copied in the statement of facts.

There is no evidence in the record tending to show that the negligence of the railroad company in failing to deliver the hogs was due to any violence on the part of the strikers on the terminal carrier or any connecting carrier. Hence it is not necessary to decide whether or not violence on the part of the strikers would excuse the railroad company. It is sufficient to say that the general rule is that the carrier is liable for the negligence of its servants during the course of their employment, and therefore if its employees go on a strike, abandoning the performance of their duty and causing the delay in the transportation of goods, the carrier is liable. 10 C. J., par. 414, p. 293, and *Railway Co. v. Nevill,* 60 Ark. 375.

But, as we have already seen, the shipment was an interstate one, and is governed by the provisions of the act of Congress and the decisions of the United States Supreme Court construing the same. In addition to the authorities above cited, see *Chicago & E. I. R. Co.* v. *Collins Produce Co.,* 249 U. S. 186.

In the case of *Adams Express Co.* v. *Croninger,* 226 U. S. 491, the court said: ''That a common carrier cannot exempt himself from liability for his own negligence or that of his servants is elementary. *York Mfg. Co.* v. *Illinois Central Railroad,* 3 Wall. 107; *Railroad Co.* v. *Lockwood,* 17 Wall. 357; *Bank of Kentucky* v. *Adams Express Co.,* 93 U. S. 174; *Hart* v. *Pennsylvania Railroad,* 112 U. S. 331, 338. The rule of common law did not limit his liability to loss and damage due to his own negligence, or that of his servants. That rule went beyond this, and he was liable for any loss and damage which resulted from human agency, or any cause not the act of God or the public enemy. But the rigor of this liability might

be modified through any fair, reasonable and just agreement with the shipper which did not include exemption against the negligence of the carrier or his servants. The inherent right to receive a compensation commensurate with the risk involved the right to protect himself from fraud and imposition by reasonable rules and regulations, and the right to agree upon a rate proportionate to the value of the property transported.''

It follows that the carrier may, by fair and reasonable agreement, restrict its liability to losses which are the proximate result of strikes on its own road, or that of its connecting carrier, where the loss is not occasioned by the negligence of the carrier in the premises, or the carrier could not, by reasonable diligence, have prevented the loss. Paragraph 6 of the contract of shipment is the clause which releases the company from liability by reason of delay in the transportation of live stock caused by strikes on its line or on the line of any of its connecting carriers. But, as we have already seen, the railroad company could not exempt itself from liability on account of its own negligence, and the court should have submitted to the jury that question.

It also follows that the court erred in limiting the right of the defendant to exemption from liability to a finding that the delay was occasioned solely by a strike of the employees of the Terminal Railroad Company. The Interstate Commerce Act extends to all terminal facilities and instrumentalities. *Chicago Junction Railway Company* v. *United States,* 226 U. S. 286. That case also holds that the duties of a common carrier in the transportation of live stock begin with their delivery to be loaded and end only after unloading and delivery, or offer of delivery, to the consignee. It follows that a strike on any of the connecting carriers, singly or together, would, under the terms of the contract, release the initial carrier from liability, except in case of negligence with regard to averting the loss by reason of the

strike on its own part or on the part of any of its connecting carriers.

Therefore the court erred in giving instruction No. 3 as set forth above, and for that error the judgment must be reversed, and the cause remanded for a new trial.