## St. Louis-San Francisco Railway Company v. Watts.

### Opinion delivered May 4, 1925.

1. CARRIERS—FAILURE TO FURNISH CAR—STRIKE.—Where plaintiff made a requisition for a car on September 30 to be furnished October 6, for the shipment of hogs, which was not furnished until November 11, due to a shortage of cars caused by a strike which lasted from July 1 to November 15, an instruction that the carrier would not be relieved of liability for failure to furnish the car on account of the strike, unless it notified plaintiff of its inability to furnish the car at the time he made requisition, was erroneous.

2. CARRIERS—LIMITATION OF LIABILITY.—A carrier may by express contract relieve itself from its common-law liability, except as to the consequences of its own negligence.

3. CARRIERS—DUTY TO SHIPPERS.—It is the duty of a carrier to treat all shippers alike, and the fact that a conductor, after being paid therefor, procured a car for another shipper without the carrier's knowledge or approval is not proof that the carrier was able to furnish a car to the plaintiff on the date requested by him.

4. CARRIERS—LIMITATION OF LIABILITY—CONSTRUCTION OF CLAUSE.—A clause in a shipping contract exempting a carrier from liability on account of strikes refers to existing as well as future strikes.

5. CARRIERS—LIMITATION OF LIABILITY.—While a carrier may contract against liability for loss or damage to live stock on account of strikes, it cannot contract against its own negligence, and, though a strike may be in progress, it is not relieved of liability by merely showing a strike and the consequent delay due in part to it, if by the exercise of ordinary care it might have moved the car under schedule in force during the strike.

Appeal from Washington Circuit Court; *W. A. Dickson,* Judge; reversed.

#### STATEMENT OF FACTS.

Manuel Watts sued the St. Louis-San Francisco Railway Company to recover damages for the negligent delay in failing to furnish him a car in which to ship 106 head of hogs from Durham, Arkansas, to the National Stock Yards at St. Louis, Missouri, and also for the negligent delay in transporting said hogs.

Manuel Watts was a witness for himself. According to his testimony, he lives at Durham, Washington County, Arkansas, on a branch line of the St. Louis-San

Francisco Railway Company.    On September 30, 1922,
he filed a written application with the station agent at
Durham for a car to be furnished him on October 6,
1922, in which to ship 106 head of hogs to the National
Stock Yards at St. Louis, Missouri.    The car was not
furnished until the 11th day of November, 1922.    The
hogs were loaded in the car at about three o'clock P. M.,
and the car was moved out of the station some time during
the same afternoon.    Watts went on the train with the
car, and it arrived at the National Stock Yards at St.
Louis at four o'clock P. M., on November 14, 1922.    The
market was closed on that day, and the hogs were held
over until the next morning to be sold.    The train was
delayed at Springfield, Missouri, about twenty-six hours,
and the hogs were unloaded in a pen.    Seven of the hogs
were dead at the time the car of hogs was unloaded at
Springfield.    Evidence was also introduced by Watts
tending to show the loss sustained by him on account of
the fall in the market price and the shrinkage in the
weight of the hogs during the delay in transit.

According to the evidence for the defendant, in
July, 1922, the Railroad Labor Board issued an order
for the purpose of settling a dispute between the railroad
and the employees' shop crafts.    This caused a strike
on all the railroads of the United States, and 480,000 men
left the service of the railroad companies.    Sixty or
seventy per cent. of the strikers were skilled mechanics.
They had had long years of training in rebuilding and
overhauling locomotives and passenger and freight cars.
The Interstate Commerce Commission had promulgated
certain rules and regulations with regard to the condi-
tion of freight cars, passenger coaches and engines before
they could be placed in service.    These rules and regula-
tions were not suspended during the strike.    The strike
continued in force until a period of time much later than
that involved in this lawsuit.    On account of the strike
the defendant was not able to furnish cars to shippers
as it had done before the strike commenced.    On account

of the strike it was not able to get its cars repaired, and, on this account, was not able to furnish the plaintiff a car when first demanded of it; but did furnish it as soon as it could, which was on the 11th day of November, 1922.

The defendant also introduced evidence tending to show that the delay in transit after it received the hogs for shipment was due to the strike. On account of the strike the defendant inserted a clause in all its shipping contracts as follows:

"Section 1.   Except in the case of its negligence proximately contributing thereto, no carrier or party in possession of any or all of the live stock herein described shall be liable for any loss thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, the inherent vice, weakness or natural propensity of the animal, or the act or default of the shipper or owner or the agent of either, or by riots, strikes, stoppage of labor, or threatened violence."

The jury returned a verdict for the plaintiff, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*W. F. Evans* and *Warner, Hardin & Warner,* for appellant..

*Walker & Walker* and *H. L. Pearson,* for appellee.

Hart, J., (after stating the facts). The court in effect instructed the jury that the defendant would not be relieved of liability for failing to furnish the plaintiff a car for the shipment of his hogs on account of the strike, unless it notified the plaintiff of its inability to furnish the car on this account at the time he made the requisition for the car.

The undisputed evidence shows that the strike commenced on July 1, 1922, and continued in force on all the railroads of the United States until after the 15th day of November, 1922, which was the day the car of hogs in question was delivered to the consignee. The plaintiff made a requisition for the car on September 30, 1922, to be furnished on October 6, 1922. The car was not

furnished until November 11, 1922. The failure was due to the shortage of cars caused by the strike. Under these facts the instruction of the court was erroneous.

This court has held that, in an action against an initial carrier for a loss to an interstate shipment of hogs, it was error to limit the defendant's contract right to exemption from liability by reason of strikes to a finding that the delay was occasioned solely by a strike of the employees of a terminal carrier, as a strike on any of the connecting carriers would, under the contract, release the initial carrier from liability, except in cases of negligence with regard to averting the loss on its part or on the part of any of its connecting carriers. *Jonesboro, L. S. & E. R. Co.* v. *Maddy,* 157 Ark. 484.

In a later case it was held that, where a carrier is prevented from handling freight in a prompt and expeditious manner by unforeseen conditions, such as a strike, over which it has no control and over which, in the nature of things, it could have no control, it will be excused from receiving freight for shipment until such freight can, in the regular and usual course of business, be moved. *Gage* v. *Arkansas Central Rd. Co.,* 160 Ark. 402.

It results from the principles of law decided in these two cases that the carrier may, by express contract, relieve itself from its common-law liability except as to the consequences of its own negligence. In other words, the plaintiff shipped his hogs under an express contract which relieved the defendant from liability in consequence of delays in transportation caused by strikes, and, under the undisputed facts in this case, the delay in furnishing the car was due to the strike and was occasioned without any fault or negligence on the part of the defendant. But it is insisted that the undisputed evidence does not show that the failure to furnish the car at the time requested was not the result of the defendant's fault or want of care. In this respect counsel for the plaintiff rely upon the testimony of a witness to the effect that he had paid a conductor $5 to get him a car for the

shipment of live stock, and that the conductor had done so. It was the duty of the railroad company to treat all shippers alike, and the fact that one of its employees, without its knowledge or approval, had violated this duty, would not be proof that the carrier was able to furnish a car to the plaintiff on the date requested by him.

In this connection it may be stated that the clause in the contract of shipment exempting the carrier from liability on account of strikes, stoppage of labor, or threatened violence carries on its face notice to the shipper that it would not be liable for delays in furnishing cars caused by the strike. It will be remembered that the requisition for the car was made on the 30th day of September, 1922, and that a general strike had been in progress since the first day of the previous July. Under these circumstances it cannot be said, as suggested by counsel for the plaintiff, that the carrier was contracting against loss on account of delays in furnishing cars which might be suffered on account of strikes which should occur in the future. It is manifest that the exemption clause was inserted in the contract of shipment on account of the general strike which was then in force and which had been in effect for the previous three months. Hence, for the error in instructing the jury as indicated above, the judgment must be reversed.

It is also insisted by counsel for the defendant that the undisputed evidence shows that the delay in the transportation of the hogs after they have been received by the defendant and loaded in the car was occasioned by the strike without any fault or negligence on its part.

While the railroad company may contract against liability for loss or damage to live stock while in transit on account of strikes, it cannot contract against its own negligence, and, although a strike may be in progress, the railroad company is not relieved of liability by merely showing a strike and the consequent delay due, in part, to it, if the facts are sufficient to show that the railroad company, by the exercise of ordinary care,

might have moved the car of hogs from the place of shipment to the place of destination under the schedule which it had in force during the period of the strike.

For the error in instructing the jury as indicated the judgment will be reversed, and the cause will be remanded for a new trial.