**KUHLMAN PLASTICS CO., Inc., Appellant,**

**v.**

**KANSAS CITY POWER & LIGHT COM-
PANY, Inc., Respondent.**

**No. 51476.**

Supreme Court of Missouri,
Division No. 2.

March 14, 1966.

John G. Killiger, Kansas City, for appellant.

Irvin Fane, Joseph J. Kelly, Jr., Howard F. Sachs, Kansas City, for respondent; Spencer, Fane, Britt & Browne, Kansas City, of counsel.

BARRETT, Commissioner.

■ This is an action by Kuhlman Plastics Company against Kansas City Power & Light Company to recover $150,000 damages for wrongful refusal to restore electric service on demand on October 15, 1964. On its face plaintiff's petition states a cause of action in tort for breach of duty to restore service (43 Am.Jur. (Public

Utilities and Services) § 31, p. 593; Ellyson v. Missouri Power & Light Co., Mo. App., 59 S.W.2d 714) but in response to the petition the power and light company filed a motion for summary judgment, attaching to the motion three affidavits, the plaintiff's contract for service and Rule 3.02 filed with the Public Service Commission and, concedely, a part of plaintiff's contract. Kuhlman filed a counteraffidavit and after judgment a motion to reconsider together with a supplemental affidavit. But upon these documents and pleadings the court found that "there is no genuine issue as to any material fact" and accordingly entered summary judgment for the defendant power and light company and Kuhlman has appealed.

Two of the appellant's points are directed to the proposition that this was not a proper case for summary judgment, contending that its petition and counteraffidavits raised issues of fact. In part the appellant contends merely because its petition states a common-law cause of action in tort that fact issues are presented and therefore summary judgment procedure was inapplicable. And of course if the only issue was the factual one of breach of duty, depending only on the circumstances summary judgment would have been inappropriate. Cooper v. Finke, Mo., 376 S.W. 2d 225. But here the substantive cause of action does not stand alone, another circumstance has intervened and the problem is whether that intervening factor renders as a matter of law the substantive cause of action immaterial. Not every release or other document brings into play as a matter of law summary judgment procedure (Kroger Company v. Roy Crosby Company, Mo.App., 393 S.W.2d 843), but if the circumstances set forth in the motion and the supporting proof "show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law" (Civil Rule 74.04(c)), summary judgment is indeed proper as against a common-law claim for damages. Farmer v. Arnold, Mo., 371 S.W.2d 265.

And that precisely is the problem here, whether the motion and all attending and supporting proof show by "unassailable proof" (Civil Rule 74.04(h)), that the respondent light company, despite the cause of action stated in the appellant's petition, is entitled as a matter of law to judgment.

From the pleadings, affidavits and accompanying documents it appears that Kuhlman is engaged in the production of plastic products and is dependent on electrical power which was furnished under a "Primary Electric Service Agreement" with the respondent Kansas City Power & Light Company. The contract between respondent and appellant was executed in December 1955 and pursuant to its provisions the required electric power was satisfactorily supplied until the 15th day of October 1964. On that date electric service into the appellant's plant was interrupted and it is alleged that although requested the electric company wrongfully refused on that day to restore service. The line was repaired and service restored on the following day, October 16, 1964, about 4 o'clock in the afternoon by supervisory personnel, nevertheless appellant claims that it was damaged $150,000 by the respondent's failure to restore service on October 15. And, undeniably, Rule 3.02 was a part of the written agreement to supply electricity. Only insofar as material here that rule provides: *"In case the Company shall be prevented from delivering, or the Customer from receiving, all or any portion of the electric service contracted for, or in case any such deliveries are delayed, when such nondelivery, inability to receive, or delay in delivering or delay in receiving such electric service is caused by strike (which in the case of Customer shall be limited to a strike of its own employees within its plant)* * * * *or any cause reasonably beyond their control, the Company shall not be obligated to deliver nor the Customer to receive such electric service during such interruptions;* provided, however, that the Company or the Customer, as the case may be, shall be prompt and diligent in re-

moving or overcoming the cause or causes of such interruption or delay * * *." (Emphasis supplied.)

In connection with the strike provision it appears from undenied affidavits that on October 15, 1964, there was a strike of Kuhlman employees at its plant and place of business. Not all of its employees were on strike, at least the plant was in partial operation, but there was a strike and there was a picket line of striking employees "within the entrance to the Kuhlman plant" and there had been some vandalism—a shot fired into a transformer. But the immediate difficulty and cause of the interrupted service which appears in part from the appellant's affidavit was that a metal chain had been thrown across the company's line causing the outage. The appellant's supplemental affidavit says that "the break in the jumper line for transmission of power was at a point approximately ten feet from the public street in Kansas City" and outside its building and "was near to and could conveniently be reached from the public street." Nevertheless Kansas City Power and Light employees would have been required to cross the picket line maintained by Kuhlman's employees.

And in addition to the asserted lack of police protection and the fear of violence on October 15, the undenied affidavit of the company's labor relations employee asserts that on October 15 he was advised of the outage by the business manager of "Local 1464, I.B.E.W., which represents employees of the (Kansas City Power & Light) Company" and the business manager said that the company "was attempting to have employees represented by the Local cross a picket line to effect repairs * * and that the Local might go on strike." Subsequently the affidavit recites that "Mr. James (the business manager) stated to affiant that employees of Local 1464, I.B.E.W. would strike if any Company employees were sent through the picket line to restore service * * *." As stated, on the following day electric service was restored "with supervisory personnel and

police protection" and so there was a delay "of approximately one day in restoring electric service to Kuhlman" and that the delay "was caused by the strike of Kuhlman's employees within its plant and would not have occurred except for said strike."

The appellant does not question the validity of the "strike clause" (17 Am.Jur.2d (Contracts) § 417, p. 869; Annotations 35 A.L.R. 721; 125 A.L.R. 1304; 84 A.L.R.2d 12, 21) but contends that the clause may not be extended by interpretation beyond its plain terms and certainly not so as to supply proximate cause. 77 C.J.S. Sales § 209d, p. 970. In any event the appellant contends that the strike clause, which was the basis for the court's summary judgment, was entirely inapplicable to this case because the only strike in existence and to which Rule 3.02 could apply "was a strike of certain of the employees of plaintiff company" and that did not prevent the restoration of service. It is said that the strike which prevented restoration of service on October 15 was "not even in existence, but was a (mere) threat made by the Union Representative of defendant's employees" and the maintenance of "satisfactory labor relations between *itself* and *its own employees*" was not a strike or a cause within the meaning of Rule 3.02.

The only authority cited in support of this basic claim of the appellant's is De Grasse Paper Co. v. Northern New York Coal Co., 190 App.Div. 227, 179 N.Y.S. 788. There a paper manufacturer sued for damages for breach of contract to deliver large quantities of coal. As a partial defense a strike clause ("This contract is made subject to strikes") was relied upon, the other defense was a shortage of coal cars. There were many distinguishing factors in that case but it is not necessary to note them here. Among other distinguishing factors were the facts that the defendant there was a jobber and all it did was to place an order for coal with one mine. Not only did the defendant not contract for coal elsewhere, the defendant made contracts for coal for other parties and all at the

same mine. And even though there was a car shortage and labor troubles the mine produced 160,000 tons of coal, more than enough to fulfill plaintiff's needs, and so as the court observed the defendant was unable to get the coal "not because there was an insufficient amount produced at the mine, but because the selling agents sold it and shipped it elsewhere." And finally therefore the court said, "Some other cause for nonfulfillment intervened and became the proximate cause, and it is found in the failure of the defendant so to protect itself, by purchase or by adequate contractual relations with third parties, so that it might obtain the portion of the coal produced which was necessary to the fulfillment of the contract with the plaintiff."

A "strike clause" requires "amplification" but the clause alone is sufficient to call attention to "the tacit fundamental assumptions on which a contract is made; but it is far from being a complete expression of those assumptions. What those assumptions are, on the basis of which the true conditions of liability for breach must be determined, remain to be proved by supplementing testimony." 3A Corbin, Contracts, § 642, p. 70. And here in the very language of Rule 3.02 there is at least a clue as to the assumptions on which the contract was made, following the phrase "caused by a strike" there is a parenthetic clause explicitly applicable to the plaintiff Kuhlman: "(which in the case of Customer shall be limited to a strike of its own employees within its plant)." There is no such explicit, delimiting language applicable to the company, the company is excused from its obligation when nondelivery "is caused by a strike." This language obviously does not mean just any strike or labor difficulties, it means in legal contemplation material strike conditions beyond the control of the promisor company. 3A Corbin, Contracts, § 642, pp. 66–74. And the question here is whether, as exemplified by the unquestionable facts, the strike by Kuhlman's employees, the threat of a strike by the company's union employees if forced to cross a picket line and all the attendant circumstances reasonably bring the respondent company within the excusatory strike clause.

The appellant's interpretation of the situation confronting the company on October 15 is that the true cause of its "action, or inaction was not any of those which might be contemplated by the standard strike clause, but was a matter of maintaining satisfactory labor relations between *itself* and *its own employees.*" It is said that there was no physical interference to prevent the company's performance of its contractual duties and, finally, that "(t)he only strike in existence at the time of this occurrence was a strike which did not proximately cause any interference with the defendant's duties to deliver power to the plaintiff." But this interpretation is a narrow view of the total circumstances and a resulting restricted construction and application of the strike clause. "It also seems to us clear, on the evidence, that the performance of the contract was prevented by a strike; and we see no reason why the word 'strikes' should be restricted so as to apply merely to the case of a strike at the defendant's own mines. It is broad enough to include any strike having a legitimate tendency to prevent the execution of the contract, if the defendant was in the exercise of due care and diligence." Davis v. Columbia Coal Mining Co., 170 Mass. 391, 397, 49 N.E. 629, 630. As the court observed in another New York case, "The performance of the contract was made contingent upon strikes and boycotts. The appellants claim that the strikes referred to were only such as might occur in the shops of the contractor. We see no reason for thus limiting the words. The obvious intent in inserting the clause was to protect the contractor from liability for delays which it could not help, so far as they should be due to strikes. There is no reason to believe that any strike which had a legitimate tendency to retard the contractor was not meant to be covered by the expression in the contract." Milliken v.

Keppler, 4 App.Div. 42, 38 N.Y.S. 738, 739; and see Jonesboro, L. C. & E. R. Co. v. Maddy, 157 Ark. 484, 248 S.W. 911, 28 A.L.R. 498. There is more than a supporting analogy in an 1897 case in this court, Weber v. Collins, 139 Mo. 501, 41 S.W. 249. There contractors instituted a suit to recover the balance due for building a house. The defendants pleaded a special contract with $5.00 daily penalties for delay, $1010.00. The plaintiffs replied that the delays were unavoidable and excused because the contract "provided that the time for completion of the building should be extended if plaintiff was unavoidably delayed in its construction by any 'general strike.'" The proof was that from June 15 to August 8, 1892, 28 of 35 planing mills in St. Louis were closed by reason of a strike. This court said that the "strike of the operatives in the mills in St. Louis was general and I am of the opinion that the strike was general within the contemplation of the parties to the contract." This is not to lay down a general rule applicable to all strike clauses and to all possible attendant situations. But in the context of this contract and its subject matter, in the immediate situation of the parties, and in the enumerated circumstances, the essence of which appears by "unassailable proof," including the fact that on October 16 service was restored by supervisory personnel, the temporary interruption of service for not more than one day (failure to repair or restore service) was as a matter of law excusable and a complete defense to this particular claim.

Upon this particular record there was no genuine issue as to any material fact determinative of this cause and for the indicated reasons the summary judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.