## IWAI & COMPANY *v.* HERCULES POWDER COMPANY.

A purchaser of goods to be delivered in the future for exportation brought suit for damages against the vendor for refusal to deliver the goods. Upon proper construction of the contracts of purchase, certain letters of credit attending each, and subsequent correspondence by letters and telegrams tending to show the interpretation of the contracts by the parties, the purchaser was bound to furnish a vessel to receive the goods not later than June. Where a vessel was not so furnished, the purchaser can not recover for a refusal to deliver the goods after the time had expired.

No. 4997. SEPTEMBER 25, 1926.

Certiorari; from Court of Appeals. 34 *Ga. App.* 14.

Iwai and Company Limited, a corporation under the laws of the Empire of Japan, having a branch office in New York, instituted an action against Yaryan Rosin & Turpentine Company, a domestic corporation residing in Brunswick, Glynn County, Georgia, for damages from alleged breaches of four separate written contracts. The contracts were for purchase of certain quantities of rosin to be delivered in the future, for foreign export from the port of New Orleans, Louisiana. Each of the contracts was attended with a letter of credit for stated amounts, issued by a bank, authorizing drafts by the vendor for the price of the rosin and ocean freight. The letters of credit contained limitations as to time. Two of them were to expire on June 30, and the other two on July 31. One of the contracts was for "May-June

Sales, 35 Cyc. p. 177, n. 92.

shipment" and the other three were for "June shipment." The purchaser failed to furnish a ship at New Orleans during "May-June," or during "June," to receive delivery of the rosin, and there was no delivery. After June the vendors on demand for the rosin refused delivery. The petition as amended set forth copies of the contracts, letters of credit, and certain letters and telegrams between the parties, relating to their acts in reference to the contracts. The defendant filed a general demurrer to the petition. The Hercules Powder Company, a domestic corporation, became successor to Yaryan Rosin & Turpentine Company, assuming its liabilities generally, and was substituted as defendant. The trial court sustained the general demurrer in so far as it related to the two contracts that were attended by letters of credit that expired on June 30, and overruled it in so far as it related to the two contracts that were attended by letters of credit that·expired July 31. The defendant excepted to the part of the judgment overruling the demurrer, and the plaintiff filed a cross-bill of exceptions to the part of the judgment which sustained the demurrer. The Court of Appeals reversed the judgment on the main bill of exceptions, and affirmed the judgment on the cross-bill, holding in effect that the petition failed to allege a cause of action upon either of the contracts. In a petition for certiorari to the judgment of the Court of Appeals, the following appears:

"The Court of Appeals held Iwai had breached the contracts by failing to provide a vessel at New Orleans by July 1st and in furnishing freight bookings. The rosin was to be shipped by Yaryan by rail from Brunswick to New Orleans, and Iwai expected to ship the rosin by steamer from New Orleans to Japan. Iwai engaged space for all the rosin upon a steamer of the O. S. K. Line, advertised to sail from New Orleans during the month of June. This was the only line operating between New Orleans and Japan, and it was contemplated by both parties that the rosin should be shipped by this steamship line. Due to war conditions and the demoralization of shipping, the steamer was delayed and did not arrive at New Orleans until after July 1st. Yaryan was to get payment for the rosin by drawing sight draft against letters of credit issued by a New York bank and provided for in the contracts. Iwai furnished these letters of credit, which were accepted by Yaryan and are attached to the petition as ex-

hibits. The four contracts and letters of credit are very similar, except that the first contract (No. 1319) provides for 'payment cash against ocean bill of lading,' and the last three contracts provide for 'net cash against dock receipts and invoices.' Under all four contracts Yaryan was to draw sight draft against the Hongkong & Shanghai Bank in New York, whose letters of credit Yaryan held. The Court of Appeals held under an FAS contract (free alongside steamer) it was essential for the buyer to provide a steamer. . . We quote here the material parts of contract No. 1346 (page 24 of the Record) : 'Shipment: June steamer from New Orleans. Price: At $10.30 per 280 lbs. gross for net FAS steamer, New Orleans. Terms: Net cash against dock receipt and invoices. We have opened credit with the Hongkong & Shanghai Bank. Freight Booking: To be advised you separately.'

"2. All communications between the parties were in writing. In order to get a decision on the pleadings which would control the question of liability, the contracts, letters of credit, and all material communications were set forth in the petition and amendment. The lower court sustained the special demurrers, and the general demurrer in so far as it applied to the first two contracts, and overruled the general demurrer in so far as it applied to the last two contracts. The effect of the ruling of the lower court was, there was no liability on the first two contracts where the letters of credit expired June 30th, and there was a liability on the last two contracts, where the letters of credit expired July 31st. The Court of Appeals affirmed the lower court as to the first two contracts, and reversed it as to the last two contracts. The effect of the judgment of the Court of Appeals is, there is no liability on any of the contracts. A motion for rehearing was duly filed, and overruled by the Court of Appeals on June 15th.

"3. Petitioner alleges the Court of Appeals erred in holding there was no liability on any of said contracts, and petitioner specifies the following errors: A. In holding Iwai was in default unless it actually provided a vessel during June, petitioner respectfully submits the Court of Appeals erred for the following reasons: (a) This ruling is contrary to law and repeated decisions of the courts construing FAS contracts. (b) It is contrary to

the well-understood trade construction of FAS contracts similar to those involved in this case. (c) Even if a vessel had to be provided under the first contract, which covered payment against ocean bill of lading, it was not necessary to furnish a vessel under the last three contracts, which provide for payment 'against dock receipts and invoices.' The buyer had a perfect right to change its mind and not ship at all. The only concern of Yaryan was to get its money, and this it could do as soon as the rosin reached the dock, regardless of the arrival of the steamer. It is respectfully contended that to permit such a construction of an FAS contract to become the law of this State would seriously embarrass merchants and shippers, and compel the business world to adopt a special form of contract to protect themselves in the State of Georgia, different from contracts generally used and recognized by the business world.

"B. In holding Iwai was in default in furnishing freight bookings, petitioner respectfully submits the court erred, because it appears that Iwai actually did make freight bookings, and because Yaryan is estopped by its complete silence from June 6th to July 1st, when it cancelled the contracts, the day after the time expired. Iwai, in its letter of June 6th to Yaryan (exhibit 13, page 31 of the record), wrote: 'All this rosin has been booked for the S/S Sumatra Maru' of O. S. K. Line, of which J. H. W. Steele Company, of New Orleans, were the agents. Also Yaryan was advised of the routing. ' 'Long and satisfactory business relations' had existed between Iwai and Yaryan. There was a tremendous advance in the price of rosin. In response to Yaryan's telegram of June 5th that it would not carry the rosin longer than June, Iwai wrote Yaryan on June 6th (exhibit 13, page 31 of the record) it had taken up the matter with the New York agent of the O. S. K. Line, and said, 'We believe that shipping instructions should be furnished you sometime between 1st of June and the 15th.' The letter said, in substance, the agents of the steamer would give the shipping instructions, and said 'If Caldwell Company' [agents of the ship] 'fail to furnish you with information, kindly refer the matter to this office, and we will again take the matter up to your satisfaction.' Knowing that Iwai in New York thought everything was satisfactory to Yaryan, and that if not Yaryan would notify it, Yaryan kept entirely

quiet from June 6th until July 1st, the very day after the time expired, when it cancelled the contracts and secured for itself the profits on the rosin which it had sold to Iwai. Petitioner contends good faith required Yaryan to speak, and its failure to do so was tantamount to consent and estopped it."

*Adams & Adams* and *Conyers & Wilcox,* for plaintiff.

*Bennet, Twitty & Reese,* for defendant.

ATKINSON, J. A controlling question is presented in the first assignment of error upon the judgment of the Court of Appeals. That is, did the Court of Appeals err in holding that the plaintiff was bound to provide a vessel at New Orleans not later than June 30 to receive the rosin? This question depends upon a proper construction of the contracts in their entirety, in the light of the subsequent conduct of the parties with reference thereto, as shown by the correspondence attached as exhibits to the petition. After careful consideration this court has reached the conclusion that the Court of Appeals did not err in holding that the plaintiff was bound to provide a vessel as indicated, and that, having failed to do so, plaintiff could not recover against the defendant on the basis of refusal to deliver the rosin after expiration of the time. The Court of Appeals ruled as above indicated, and also that the petition showed another breach of the contract by the plaintiff's failure to furnish the defendant with "freight bookings." The second assignment of error in the petition for certiorari relates to this last ruling; but no decision will be made on this question, because it is unnecessary in view of the affirmance of the judgment of the Court of Appeals as to the duty of the plaintiff to furnish the ship. The following presents the view expressed by the Court of Appeals: "As this court sees this case it presents for consideration two main propositions: (1) What is the proper construction of the four contracts on which suit was brought? (2) Were these contracts modified by the correspondence attached to the petition as exhibits? As to the first of these let us see what were the obligations of the parties under the contracts, in so far as questions relative thereto are raised in the case. Iwai's obligations were to secure letters of credit, provide the steamers to transport the rosin, pay for the rosin at so much 'gross for net, FAS steamer New Orleans, and furnish freight bookings.' Under the contract, when should the steamer be pro-

vided? Under none of the contracts was there any provision for 'shipment' later than 'June steamer from New Orleans.' What does 'June steamer from New Orleans' mean? That by these words Yaryan understood that delivery should be made in June is shown by the correspondence with the plaintiff, and especially by the following letters: On May 28 Yaryan wrote Iwai, in reference to contract No. 1319, in part as follows: 'This contract calls for May-June shipment, and the letter of credit of your bank expires June 30, 1919. Furthermore, we have purchased a portion of this rosin from another party and specified May-June shipment, and he will require us to take delivery by June 30.' On June 5, in reply to advice from Iwai that the 'above rosin will be lifted last half of July,' Yaryan wrote: 'We can not carry rosin later than June.' That Iwai understood that delivery was to be made in June is shown also by the correspondence, and especially by its letter of June 6, in which it wrote: 'As it takes more than a week for a car to travel from your factory to the port, and over a week for the loading, we believe that shipping instructions should be furnished you between 1st of June and the 15th.' Also by its letter of July 8, stating that a certain steamer probably would arrive about July 20, and adding: 'If you can oblige us by waiting until this steamer, will appreciate your courtesy;' and 'All this trouble is due to steamship [company?] failing to bring ship to New Orleans, over which we have no control, and we sincerely hope that you will not hold us on this point.' It will be noted that in this letter there is not the slightest suggestion that Yaryan had cancelled the contracts when it had no right to do so. In so far as contracts 1319 and 1345 are concerned, it is apparent that both Iwai and Yaryan understood that they would expire with June, as the supporting letters of credit each expired June 30. While these letters of credit would have been good at any time during their life, had their expiration date been months after the expiration of the contracts, and their expiration would not fix the date of the expiration of the contracts, they were no longer of any avail after their expiration; and this fact seems conclusive that when they were signed both parties understood that the two contracts supported by them would end with the expiration of the letters of credit. As an abstract proposition, letters of credit supporting contracts would be available if they

matured after the contracts, but could not be used after their expiration, even though it be during the life of the contracts. Under the other facts of the case, the fact that two of the letters of credit expired July 31 was immaterial.

"From the foregoing it appears that the contract provided that Iwai was to provide a steamer from New Orleans during June; and as he did not do that, he failed in this part of his obligation. Did Iwai furnish 'freight bookings' as contemplated in the contract? Under the marginal heading 'Freight booking' there was a promise to Yaryan, in the first contract, that it would be advised 'in a day or two,' and in the other contracts that it would be advised 'separately.' These promises have never been complied with. In its letter of June 6, Iwai, after saying, 'We believe shipping instructions should be furnished you sometime between the 1st of June and the 15th,' continued: 'We took this matter up with Caldwell & Company, New York shipping agents of O. S. K., and they assured us that they would communicate direct with J. H. W. Steele Company and ask them to issue accurate information as to shipment to be made against our above contracts.' Caldwell & Company wrote to Yaryan on June 6, regarding shipment of rosin under contracts 1345, 1346, and 1347, in part as follows: 'We wish to advise that we have requested the J. H. W. Steele Company, of New Orleans, to advise you when to forward this material to New Orleans, as sailing of steamer is still indefinite. *When you receive this advice* please forward this material,' etc. (Italics ours.) The J. H. W. Steele Company did not write to Yaryan until July 7, after the contracts had been cancelled. Yaryan had, on June 5, positively told Iwai that it could not carry the rosin longer than June, and made Iwai two propositions, neither of which was accepted, but Iwai contented itself with the suggestion that it had taken the matter up with Caldwell & Company and they had assured it that they would communicate with J. H. W. Steele Company, and 'ask them to issue accurate information as to shipment to be made against our above contracts.' During the life of the contracts this 'accurate information' was never furnished Yaryan. 'Freight booking' is 'making specific arrangements for the transportation of goods by a particular vessel in advance of its sailing day.' *Ocean Steam-*

51

*ship Co.* v. *Savannah Locomotive Works,* 131· *Ga.* 831 (5) [63
S. E. 577, 20 L. R. A. (N. S.) 867, 127 Am. St. R. 265, 15 Ann.
Cas. 1044]. From the foregoing it appears that Iwai breached
its contract, not only by failing to provide a vessel for the trans-
portation of the rosin, but also ·by failing to furnish 'freight
bookings.' In the correspondence attached to the petition as ex-
hibits there is nothing that would· change or modify the contract.
Moreover, each contract provides that 'No additions or amend-
ments to this contract shall be binding until the same be endorsed ·
in writing upon the back hereof and signed by the parties.' There
was no such endorsement· upon either of the contracts."

While no decision will be made as to failure· or the effect of
failure to make "·freight bookings" the fact that the contracts
contained provisions for furnishing the defendant with "freight
bookings" supports the construction that the contracts contem-
plated delivery to a vessel to be furnished by the purchaser. If
that were not so, the matter of "freight bookings" would be of no
concern to the vendor, and would have no place in the contract.
Employment of the term FAS (stated in the petition for cer-
tiorari to mean "Free Alongside Steamer") has a like significance.
This term does not, as contended, relate merely to price of the
goods, though in the form it is written opposite the word "price,"
but it essentially relates both to price and delivery. It must be
construed in connection with its context. It· can not be written
out of the contracts, but must be given effect. It was for many
reasons a matter of practical advantage to the purchaser to have
the goods delivered alongside the ship, and an inference arises
that such advantage was contemplated when the provision was
made. It requires more than mere placing the goods on a dock,
at any time within the periods "May-June" or "June." It re-
quires placing them within such periods on a dock where the pur-
chaser should place a ship to receive them, and that they be
placed alongside the ship, which implies presence of the ship. If
it would make a difference that the contract specified a particular
dock and a particular ·time at which the goods should be placed,
there· was no such provision in the contracts under consideration.
The provision was, "Freight booking to be advised you separately."
The fact that three of the contracts provided for payment against
"dock receipts and invoices" does not alter the case. Nor does

it matter whether the purchaser had a right to change his mind and not ship at all. He did not do so, and there was no modification of the contract. The vendor offered, by telegram of June 5, 1919, to modify the contracts, but the offer was not accepted. It remained the duty of the vendor to place the goods alongside the ship where the contract provided. When this should be done he would be entitled to dock receipts and invoices upon which to draw his pay, but such provision for payment would not displace the obligation to deliver alongside the ship. Nor did failure of the vendor to further notice or reply to the request made in the letter of the purchaser of June 6th, sent in reply to the above telegram, affect the case. The request was: "If Caldwell & Company fail to furnish you with information, kindly refer the matter to this office, and we will again take the matter up to your satisfaction." The vendor was not bound to comply with the request to "refer the matter," and failure to do so would not amount to a waiver or an estoppel to prevent the vendor from insisting on the terms of the contract.

*Judgment affirmed. All the Justices concur, except*

HINES, J., dissenting. But one ship per month sailed from the port of New Orleans to the port in Japan to which the buyer intended to ship this rosin. This ship was not owned or controlled by the buyer, and this was known to the seller. Fairly construed, the contracts of purchase contemplated that the buyer would notify the seller of the booking made by it with this ship for the transportation of this merchandise from New Orleans to Japan, and ordinarily this was a condition precedent with which the buyer had to comply before the seller would be required to deliver the goods. Ordinarily, failure to comply with this condition precedent on the part of the buyer would excuse the seller from delivering these goods. But it became known to both parties that this ship would not dock at the port of New Orleans during the month of June, and that for this reason compliance with this condition became impossible. In these circumstances the seller was not relieved from its obligation to deliver the rosin when, without fault of the purchaser, no vessel was at New Orleans to receive it, where no additional burden was imposed upon the seller. Douglas Fir &c. Co. *v.* Comyn, 279 Fed. 203; Meyer *v.* Sullivan, 40 Cal. App. 723 (181 Pac. 847). Where

a contract for the delivery of goods at a stated time and place becomes impossible of performance according to its terms, the seller is not entirely relieved from any obligation, but is bound to make tender of the best delivery possible. Labaree Co. *v.* Crossman, 100 App. Div. 499 (92 N. Y. S. 565), s. c. 184 N. Y. 586 (77 N. E. 1189). This is especially so when payment for this rosin is not made dependent upon delivery at the side of the ship. By the first contract payment was to be made upon production of the bill of lading. This could have been obtained by delivery of the rosin to the ship's dock, although the ship was not at dock. By three of the contracts, payment was to be made upon dock receipts and invoices. These could have been furnished without the ship being at dock, when the goods were placed there.

Furthermore, on June 6 Iwai notified Yaryan that "all this rosin had been booked for SS. 'Sumatra-Maru of O.S.K. Line.'" So there could not have been any breach of this contract for failure of the buyer to notify the seller of the booking of the rosin. Failure of the ship to arrive or depart during June would not, as stated above, relieve the seller from making delivery. Furthermore, under the correspondence in this case, I am of the opinion that the seller was estopped from setting up the defense which it presented.